STATE OF NORTH CAROLINA v. EDWIN LaVERNE ELLIOTT

No. 8327SC422

(Filed 19 June 1984)

1. **Criminal Law § 102.2— opening argument—limiting to nature of defense—no abuse of discretion**

    A trial court properly limited defense counsel's opening statement in a prosecution for second-degree kidnapping and assault with a deadly weapon to the nature of defendant's defense and the evidence he intended to offer to support it.

2. **Criminal Law § 66.1— testimony identifying defendant as perpetrator of crime —not inherently incredible**

    There was nothing inherently incredible about a prosecuting witness's ability to make an observation and identification of defendant where the evidence tended to show that on the night in question, there were lights along the front of the mall and in the mall's parking lot where the prosecuting witness was; the prosecuting witness's van was parked about eight car lengths from the entrance of the mall and directly in front of a "very bright" light that illuminated the inside of her van; that as her assailant stood in the doorway of the van, the prosecuting witness was face to face with him and had a full view of his face for approximately five to fifteen seconds; her assailant made her slide from the driver's seat to a position between the driver's seat and the front passenger's seat; her assailant then got into the driver's seat and she was in close proximity to him for approximately five minutes; while in the van she looked at the right side of his face for approximately five seconds and again looked at his face for approximately three seconds when a friend opened the door to the van; and the prosecuting witness's description of her assailant fit the general appearance of defendant.

State v. Elliott

3. **Criminal Law § 66.3— pretrial identification procedures—no impermissible suggestiveness—in-court identification of independent origin**

There was no impermissible suggestiveness in either photographic display procedures or lineup procedures where the evidence tended to show that the victim was allowed to view a tray of photographs of various individuals at the police station within a few days after the incident, and the victim did not pick out anyone from this tray of photographs. Thereafter law enforcement officers gave a manila envelope containing eight photographs of individuals similar to defendant, and including the defendant, to the victim. After viewing the photographs, and without any suggestions or help from the police, the victim said that her assailant was either number five (defendant) or number six. Prior to viewing the photographs, the victim had seen an article in the newspaper, which contained a photograph of the defendant, stating that a suspect had been arrested in her case; however, the photograph was not similar in appearance to photograph number five, and the photograph in the newspaper was not a good photographic representation of the defendant's appearance as he appeared in a photographic lineup given to the victim. A few days later, the victim was asked to view a live lineup at the police station; the defendant, who was in custody in connection with another case, agreed to the live lineup and his attorney was present; the victim was in the room to view the lineup for approximately five minutes where she viewed the full facial view of the individuals in the lineup for some one and one-half minutes and she asked the police officer to have them turn so that she could see the right side of their face; instead of seeing the right side, she saw the left side and told the police officer that to the best of her knowledge, number two (defendant) was the man who had assaulted her. All six of the individuals in the live lineup were dressed alike, were approximately the same height and build, and had approximately the same length of hair and amount of facial hair.

4. **Searches and Seizures § 47— assertion that search warrant invalid in that part included false statement by affiant—no challenge of "good faith"**

The trial court properly denied defendant's motion to suppress the testimony identifying defendant's MGB as the vehicle the victim's assailant drove away in on the ground this evidence was obtained as the result of the seizure of his vehicle pursuant to an invalid search warrant where defense counsel conceded that defendant was not questioning the good faith of the affiant in including a questioned statement, but was seeking to attack the factual accuracy of the information provided. G.S. 15A-978(a) permits a defendant to challenge the validity of a search warrant by attacking the good faith of the affiant and providing information relied upon to establish probable cause, but it does not permit a defendant to attack factual accuracy of the information given in support of probable cause except on the ground that it was untruthful in the sense that it was not given in good faith.

5. **Criminal Law § 105.1— waiver of his motion to dismiss by introducing evidence**

By introducing evidence, defendant waived his motion to dismiss at the close of the State's evidence. G.S. 15-173; App. R. 10(b)(3).

**6. Criminal Law § 34.5— admission of evidence of independent criminal offense—admissible to show identity of defendant**

The trial court properly admitted a witness's testimony concerning an offense committed upon her by defendant as substantive evidence of defendant's guilt where the similarity of the incidents experienced by the victim in this case and the witness provided the basis for a reasonable inference that the man who kidnapped and assaulted the witness was the same man who kidnapped and assaulted the victim in this case. However, the court erred in allowing into evidence the witness's testimony that defendant made her undress and threatened to commit a sexual offense upon her since that portion of testimony had no similarity to the incident perpetrated upon the victim in this case and did not tend to identify her assailant. Nonetheless, the error was nonprejudicial since defendant failed to demonstrate that the jury would likely have reached a different result if the court had properly excluded this portion of the testimony.

APPEAL by defendant from *Helms, Judge.* Judgment entered 18 August 1982, Superior Court, GASTON County. Heard in the Court of Appeals 1 December 1983.

In case number 82CRS2852 defendant was indicted and tried for first degree kidnapping and in case number 82CRS2853 defendant was indicted and tried for assault with a deadly weapon with intent to kill inflicting serious bodily injury. Defendant was convicted of second degree kidnapping and assault with a deadly weapon. He was sentenced to an active term of nine years for the kidnapping conviction and an active term of two years for the assault conviction to run consecutively to the nine year sentence. From said judgments, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Jay Stroud, for defendant appellant.*

JOHNSON, Judge.

The State's evidence tended to show that on 4 February 1982 at about 9:05 p.m., Rhonda Faulkner left Eastridge Mall in Gastonia and got into her van which was parked at the main entrance to the mall. Her van failed to start and she reentered the mall and called Marion Metcalf, a friend, and requested that he come and help start her van. Approximately 25 minutes later, she returned to her van. As she got into her van, the defendant stepped between the door and the body of the van and prevented

her from closing the door. Defendant then stated, "you don't know me, but I have a knife to your throat. Move over." Defendant directed her to get between the two bucket seats in the front of the van and advised her that he was being chased by the police and that she was going to take him to Cox Road near the Coachman Inn. Defendant asked her for the ignition key and as she reached in her bag, cut her hand with the knife. At this time Marion Metcalf arrived and approached the van. Defendant jumped out, ran, got into a 1970 white MGB with a black vinyl top and drove away. Defendant was in Ms. Faulkner's presence for approximately five minutes.

On 6 February 1982, Ms. Faulkner viewed a photographic lineup. She stated that her assailant was either number five or number six. Defendant was number five. On 9 February 1982, she picked defendant out of a lineup. Over defendant's objection, Ms. Faulkner was allowed to identify defendant as her assailant. Additionally, and over defendant's objection, Marion Metcalf was permitted to identify a photograph of defendant's 1970 MGB as the vehicle he saw Ms. Faulkner's assailant leave in. The State's evidence further tended to show that on 5 February 1982, Detective Crosby interviewed defendant. At that time, defendant stated that he owned a 1970 white MGB with a black vinyl top which he drove to Eastridge Mall in Gastonia at about 7:30 p.m. on 4 February 1982 and that he left the mall between 9:15 and 9:35 p.m.

Defendant's evidence tended to show that defendant is a member of the Army Reserve and has a very good character and reputation. In addition, on 4 February 1982 between 9:30 and 9:35 p.m., defendant was at the Lakeview Superette and was wearing blue jeans, a long sleeve plaid shirt and had a beard of one and one half inch in length. Defendant arrived home at about 9:50 p.m. On 6 February 1982, Ms. Faulkner described her assailant to the police as being 25 to 35 years of age, between 5'11" and 6'2" tall, medium to slender build, wearing a brown jacket and possibly white trousers, and had a two to three day's growth of hair on his face, with a reddish tinge in color.

In rebuttal, the State offered the testimony of Norma Cissell. She testified that on 22 December 1981 at about 9:00 p.m., she returned to her vehicle which was parked in front of Eastridge

Mall after she had finished shopping. Cissell then testified, over defendant's objection, that as she got into her vehicle, defendant grabbed her, placed a knife to her throat and threatened to kill her if she screamed. Defendant forced his way into Cissell's car and told her he had robbed a bank and that the police were after him. Defendant then told Cissell that she was to give him a ride to Cox Road and forced her to drive him to the Coachman Inn. There, defendant forced her to undress and threatened to commit the crime of cunnilingus upon her. She managed to escape before any sexual act was committed.

[1] By his first assignment of error, defendant contends the court erred in prohibiting defense counsel from stating principles of law during his opening statement.

G.S. 15A-1221(a)(4) provides that in a criminal jury trial each party must be given the opportunity to make a brief opening statement. While the exact scope and extent of an opening statement rest largely in the discretion of the trial judge, we believe the proper function of an opening statement is to allow the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it. *See generally*, 23 A C.J.S., *Criminal Law*, § 1086 (1961). It should not be permitted to become an argument on the case or an instruction as to the law of the case. *Id.*

In the case *sub judice* the nature of defendant's defense was that of alibi. In his opening statement defense counsel sought to argue various principles of law applicable to the identification of an accused in a criminal action. The trial court properly limited counsel's opening statement to the nature of his defense and evidence he intended to offer to support it.

Defendant contends the trial court erred in the denial of his motion to suppress Ms. Faulkner's in-court identification of him.

Defendant urges two grounds for this assignment of error; first, that Ms. Faulkner's identification testimony was "inherently incredible" because of the physical conditions under which the "alleged" observations occurred and second, that the pretrial identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate defendant's right to due process of law. Pursuant to defendant's motion

to suppress, the trial court conducted a *voir dire* hearing, after which it made finding of fact and concluded as a matter of law as follows:

> The pretrial identification procedure involving the defendant was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate the defendant's rights to due process of law. Irrespective of this finding, based on clear and convincing evidence, the in-court identification of the defendant is of independent origin based solely on what the [Ms. Faulkner] saw at the time of the incident on February 4, 1982, and is not tainted by any pretrial identification procedure so unnecessarily suggestive or conducive to irreparable mistaken identification as to constitute a violation of due process of Law.

## Defendant's First Theory

[2] With respect to defendant's first theory, ordinarily the question whether the testimony of the prosecuting witness, tending to identify the defendant as the perpetrator of the crime, has any probative force is exclusively a matter for jury determination. *State v. Guffey*, 265 N.C. 331, 144 S.E. 2d 14 (1965). However, this rule does not apply where the only evidence identifying the defendant as the perpetrator is "inherently incredible" because of undisputed facts clearly precluding a reasonable possibility of observation sufficient to permit subsequent identification. *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967); *accord, State v. Guffey, supra*, and *Jones v. Schaffer*, 252 N.C. 368, 114 S.E. 2d 105 (1960). Defendant relies upon *Miller*, in which the Court reversed the defendant's conviction on the ground that the only evidence tending to identify defendant as one of the perpetrators of the crime was inherently incredible because of uncontradicted facts which precluded a reasonable possibility of observation sufficient to permit subsequent identification. *Miller* is distinguishable from the case at bar. In *Miller*, the identification witness was never closer than 286 feet to a man he saw running and who he was attempting to identify as the perpetrator of the crime. Also, the witness' description of the man differed from the defendant's actual appearance. It is apparent from Ms. Faulkner's testimony on *voir dire* that she had an opportunity to observe her assailant in the Eastridge Mall parking lot sufficient to permit a subsequent

identification. On the night in question, there were lights along the front of the mall and in the mall's parking lot. Her van was parked about eight car lengths from the entrance of the mall and directly in front of a "very bright" light that illuminated the inside of her van. As her assailant stood in the doorway of the van, Ms. Faulkner was face to face with him and had a full view of his face for approximately five to fifteen seconds. Her assailant made her slide from the driver's seat to a position between the driver's seat and the front passenger's seat. Her assailant then got into the driver's seat and she was in close proximity to him for approximately five minutes. While in the van she looked at the right side of his face for approximately five seconds and again looked at his face for about three seconds when Marion Metcalf opened the door to the van. Ms. Faulkner's description of her assailant fit the general appearance of defendant. This evidence shows that the physical conditions of the situation were favorable for observation, and there is nothing inherently incredible about Ms. Faulkner's ability to make an observation under these circumstances. Defendant's contention on this point is, therefore, without merit.

### Defendant's Second Theory

[3] Here, defendant contends the pretrial identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate defendant's right to due process of law.

The test under the due process clause as to pretrial identification procedure is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). The court employs a two-step process in evaluating such claims of denial of due process: (1) whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification; and (2) if so, whether, under the total circumstances, the suggestive procedures used gave rise to a substantial likelihood of irreparable misidentification. Only in the event that the first question is answered affirmatively is inquiry into the second question necessary. *State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978).

The trial judge made findings of fact consistent with the following evidence: Ms. Faulkner was allowed to view a tray of photographs of various individuals at the police station within a few days after February 4, 1982. Ms. Faulkner did not pick out anyone from this tray of photographs. Thereafter, law enforcement officers gave a manila envelope containing eight photographs of individuals, including the defendant, to Ms. Faulkner. Each of the eight persons in the photographs were approximately the same age, had the same hair length, and same amount of facial hair. None of the two or three police officers who were present when Ms. Faulkner viewed the photographs said anything to her except that she should view the photographs carefully. No police officer suggested, in any way, that she should pick out a particular photograph. After viewing the photographs, she said that her assailant was either number five (defendant) or number six. All of the eight photographs were of the same size and were similar photographs in that they all had full facial views of the left side of the subject's face. In addition, there was nothing in the eight photographs themselves that made one photograph stand out in comparison to all the other photographs.

Prior to viewing the photographs, Ms. Faulkner had seen an article in the newspaper, which contained a photograph of the defendant, stating that a suspect had been arrested in her case. That photograph was not similar in appearance to photograph number five which she thought may have been a photograph of her assailant. Also, the photograph shown in the newspaper was not a good photographic representation of the defendant's appearance as he appeared in the photographic lineup given to Ms. Faulkner or of the way he appeared in the photograph taken of the lineup which was later conducted. Ms. Faulkner stated that she had selected photographs five and six based on her observation made on the night of February 4, 1982, and not on the photograph which she had seen in the newspaper prior to the photographic identification procedure.

A few days later, she was asked to view a live lineup at the police station. Although she assumed that the suspect in her case would be in the lineup, she was not told that he would be. The defendant, who was in custody in connection with another case under an order of arrest, agreed to the live lineup and his attorney was present. Ms. Faulkner was told to take her time in

viewing the live lineup through a glass mirror. She was in the room to view the lineup for approximately five minutes where she viewed a full facial view of the individuals in the lineup for some one and one-half minutes and she asked the police officer to have them turn so she could see the right side of their face, as that was the side of her assailant's face which she saw on the night of February 4, 1982. Instead of seeing the right side, she saw the left side and told the police officer that to the best of her knowledge, number two (defendant) was the man who had assaulted her. She told the officer that she was as positive as she could be that number two was the assailant and any hesitancy on her part was a result of the fact that the defendant would not look up during the live lineup procedure. The defendant was the only subject in the lineup who was also shown in the photographic lineup taken from the manila envelope. All six of the individuals in the live lineup were dressed alike, were approximately the same height and build, and had approximately the same length of hair and amount of facial hair. During the lineup, no police officer or anyone else suggested to Ms. Faulkner in any way that she should pick out any individual in the lineup as being the one who assaulted her on February 4, 1982. The trial judge also found as a fact that Ms. Faulkner's in-court identification of the defendant was of independent origin based solely on what the witness saw at the time of the incident on 4 February 1982.

We find no hint of impermissible suggestiveness in either the photographic display procedures or the lineup procedures employed here. Having found no impermissible suggestiveness in the procedures employed, we need not consider whether they resulted in substantial likelihood of irreparable misidentification. *State v. Headen, supra.* But even if we had found that the pretrial identification procedures involving defendant were impermissibly suggestive, defendant's contention is nonetheless without merit in light of sufficient *voir dire* evidence of record supporting the court's finding and conclusion that "the in-court identification of the defendant is of independent origin based solely on what the witness [Ms. Faulkner] saw at the time of the incident on February 4, 1982, and is not tainted by any pretrial identification procedure. . . ."

Defendant also contends that certain findings of fact made by the trial court are not supported by the evidence.

It is an established rule that when a trial court's findings of fact are supported by competent evidence, they are binding on appeal. *State v. Jackson*, 306 N.C. 642, 295 S.E. 2d 383 (1982). The evidence presented on *voir dire* clearly supports the court's findings. Hence, the court's findings are conclusive. Consequently, we find that the trial court correctly denied defendant's motion to suppress.

[4]  By his next assignment of error, defendant contends the trial court erred in the denial of his motion to suppress Mr. Metcalf's testimony identifying photographs of defendant's MGB as being the automobile driven by Ms. Faulkner's assailant. Defendant contends this evidence was obtained as a result of the seizure of his vehicle pursuant to an invalid search warrant.

The ground upon which defendant contends the search warrant is invalid is that the affiant, in seeking the search warrant, included a false statement in the affidavit which was relied upon to establish probable cause. By this contention, defendant contests the validity of the search warrant and the admissibility of evidence obtained thereunder by challenging the "good faith" of the affiant in providing certain information relied upon to establish probable cause.

G.S. 15A-978(a)[1] permits a defendant to challenge the validity of a search warrant by attacking the good faith of the affiant in providing information relied upon to establish probable cause. It does not, however, permit a defendant to attack the factual accuracy of the information given in support of probable cause except on the ground that it was untruthful in the sense that it was not given in good faith. *State v. Winfrey*, 40 N.C. App. 266, 252 S.E. 2d 248, *disc. rev. denied*, 297 N.C. 304, 254 S.E. 2d 922 (1979). A defendant challenging the validity of a search warrant under G.S. 15A-978(a) has the burden of showing by a preponderance of the evidence first, that the affiant acted in bad faith or acted with a reckless disregard for the truth in including a false statement in

---

1. G.S. 15A-978(a) states that: A defendant may contest the validity of a search warrant and the admissibility of evidence obtained thereunder by contesting the truthfulness of the testimony showing probable cause for its issuance. The defendant may contest the truthfulness of the testimony by cross-examination or by offering evidence. For the purposes of this section, truthful testimony is testimony which reports in good faith the circumstances relied on to establish probable cause.

the warrant affidavit, and second, that the false statement was necessary to the finding of probable cause. *State v. Winfrey, supra.*

In the case *sub judice* the facts of the affidavit used to establish probable cause are stated as follows:

The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: To sieze (sic) a 1970 MGB Serial #GHN5UA216979G North Carolina Tag RFX717 1982 Tag owned by Edwin Laverne Elliott and registered to Edwin Laverne Elliott for the purpose of photographs of the exterior surfaces and interior surfaces for purpose of identification by witness to the crime of 1st Degree kidnapping and A.W.D.W. which happened at the Eastridge Mall in Gastonia, N.C. on Feb. 4, 1982 in which Marion Metcalf was witness to, in which the victim of the above crime was Rhonda Faulkner. Marion Metcalf described the person who committed the above crime as fleeing the scene of the crime in the above described vehicle. Marion Metcalf has described the above vehicle to Sgt. D.C. Crosby and Sgt. D.C. Crosby has observed the vehicle to be the same as the vehicle described by Marion Metcalf. Edwin Laverne Elliott has been charged with the crime of 1st Degree Kidnapping and A.W.D.W. of Rhonda Faulkner.

Defendant argues first that the statement "Marion Metcalf described the person who committed the above crime as fleeing the scene of the crime in the above described vehicle," is a false statement in that a reasonable inference from this statement is that Mr. Metcalf, either at the scene of the crime or some later date, noted that the vehicle was a 1970 model, obtained the license tag and serial numbers of the vehicle and informed the police of this information; when in fact Mr. Metcalf never acquired this information. Second, that the affiant, although knowing this statement to be false, knowingly and intentionally included it in the warrant affidavit to establish probable cause. And third, that this false statement was necessary to the finding of probable cause.

An examination of the record reveals that at the trial level, defendant did not raise the issue of the "good faith" of the affiant

in providing certain information in the affidavit. The following *voir dire* statement bears this out.

> MR. STROUD: What I'm saying in return is the affidavit does not truthfully show — *I'm not saying they [the affiants] were trying to be dishonest.* All I'm saying is that the affidavit does not truthfully show the true information available to the police at the time they applied for the affidavit and gave this information to the magistrate in this form, and it does not accurately show, and therefore it was not properly issued, because information that was given to the magistrate was not correct, and that's what I want to ask him about, to establish that he did not see the tag number . . . (emphasis added).

The statement of defense counsel clearly shows that defendant was not questioning the good faith of the affiant in including the questioned statement in the affidavit, but was seeking to attack the factual accuracy of the information provided. Defense counsel's statement that he was not saying the affiants were trying to be dishonest must be considered equivalent to a concession that the affiant did not act in bad faith in including the information in the affidavit. In light of this concession and the fact that all of defense counsel's questions on *voir dire* were directed toward showing that the affidavit contained false information as opposed to seeking to disclose any bad faith on the part of the affiant, we hold that the trial court properly denied defendant's motion to suppress the testimony identifying defendant's MGB as the vehicle Ms. Faulkner's assailant drove away in.

[5] Defendant assigns error to the denial of his motion to dismiss at the close of the State's evidence. Defendant presented evidence following the denial of his motion and renewed his motion to dismiss at the close of all the evidence. The court also denied his renewed motion. By introducing evidence, defendant waives his motion to dismiss at the close of the State's evidence. G.S. 15-173; App. R. 10(b)(3). Defendant does not assign error to the denial of his motion to dismiss at the close of all the evidence and, thus, has not presented its denial for review on appeal. App. R. 10(a).

[6] Defendant also assigns as error the admission of Norma Cissell's testimony on rebuttal which tended to show defendant to be guilty of an independent criminal offense.

As stated in *State v. Freeman*, 303 N.C. 299, 301-302, 278 S.E. 2d 207, 208 (1981):

> "The general rule is that '[e]vidence of other offenses is inadmissible on the issue of guilt if its only relevance is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant act it will not be excluded merely because it also shows him to have been guilty of an independent crime.' " 1 Stansbury's North Carolina Evidence, § 91, pp. 289-290 (Brandis rev. 1973); *State v. Keller*, 297 N.C. 674, 679, 256 S.E. 2d 710, 714 (1979). If consequently, the evidence tends to identify the accused as the perpetrator of the crime charged it is admissible notwithstanding that it also shows defendant to be guilty of another criminal offense. "Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same persons, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." *State v. McClain*, 240 N.C. 171, 175, 81 S.E. 2d 364, 367 (1954); *accord, State v. Perry*, 275 N.C. 565, 571, 169 S.E. 2d 839, 843 (1969).

In *Freeman, supra,* the court held that although the victim, Ms. Whitman, had positively identified defendant as her assailant, the defendant's evidence tending to establish an alibi "made the question of whether defendant was, indeed, the perpetrator the very heart of the case"; consequently, the State was entitled, in rebuttal, to offer evidence probative of the identity question. 303 N.C. at 302, 278 S.E. 2d at 208-209. The *Freeman* court affirmed the trial court's ruling in allowing the State, in rebuttal, to introduce evidence of another crime which tended to identify defendant as the perpetrator of the crime against Ms. Whitman. Similarly, in the case *sub judice*, although Ms. Faulkner positively identified defendant as her assailant, the defendant's evidence tending to establish an alibi made the question of whether defendant was, indeed, the perpetrator the central issue of the case, thereby, entitling the State, in rebuttal, to offer evidence probative of this question.

Ms. Faulkner testified that on 4 February 1982 at about 9:30 p.m., as she entered her vehicle parked in front of Eastridge Mall, her assailant placed a knife to her throat and forced his way into her vehicle. Her assailant told her that he was being chased by the police and that she was going to take him to Cox Road near the Coachman Inn. Ms. Cissell testified that on 22 December 1981 at about 9:00 p.m., as she entered her vehicle parked in front of Eastridge Mall, defendant placed a knife to her throat, forced his way into her vehicle, told her that the police were after him and that she was going to give him a ride to Cox Road. Defendant forced her to drive to the Coachman Inn where he forced her to undress and threatened to commit cunnilingus upon her.

Except for Ms. Cissell's testimony that the defendant forced her to undress and threatened to commit a sexual offense upon her, Ms. Cissell's testimony did tend to identify defendant as the perpetrator of the crimes against Ms. Faulkner. The court properly admitted Ms. Cissell's testimony as substantive evidence of defendant's guilt. The similarity of the incidents experienced by both Ms. Faulkner and Ms. Cissell provides the basis for a reasonable inference that the man who kidnapped and assaulted Ms. Cissell was the same man who kidnapped and assaulted Ms. Faulkner. However, the court erred in allowing into evidence Ms. Cissell's testimony that defendant made her undress and threatened to commit a sexual offense upon her. This portion of Ms. Cissell's testimony has no similarity to the incident perpetrated upon Ms. Faulkner and does not tend to identify her assailant. Nonetheless, we hold that the error was nonprejudicial. The defendant has failed to demonstrate that the jury would likely have reached a different result if the court had properly excluded this portion of the testimony.

We have carefully examined defendant's remaining assignments of error and find them to be without merit.

In the trial of defendant's case we find no prejudicial error.

No error.

Judges ARNOLD and PHILLIPS concur.