STATE OF NORTH CAROLINA v. JEFFREY HARLISS FREEMAN

No. 8817SC592

(Filed 18 April 1989)

1. **Constitutional Law § 31— refusal to appoint psychiatrist**

   Motion by an indigent defendant charged with statutory rape and first degree sexual offense for the appointment of a psychiatrist to examine and test defendant was properly denied by the trial court where defendant's assertions that the requested assistance would be beneficial were not sufficiently particularized.

2. **Criminal Law § 161.2— assignment of error not pertinent to argument — abandonment**

   Where an assignment of error set forth in defendant's brief relating to a particular argument is not pertinent to

the question argued, the assignment of error set out in the brief is deemed abandoned. Appellate Rule 28(b)(5).

3. **Criminal Law § 102.9— prosecutor's jury argument—reference to defendant as "animalistic"**

The trial court did not abuse its discretion in failing to respond to defendant's objection when the prosecutor called defendant an "animalistic human being" during closing arguments in a statutory rape and first degree sexual offense case.

4. **Criminal Law § 89.3— corroboration—extrajudicial statement of another—harmless error**

The trial court erred in permitting a witness to corroborate her own testimony with an extrajudicial statement of another, but such error was not prejudicial.

5. **Criminal Law § 102.2— opening statement—trial court's interruption and classification as jury argument**

The trial court did not abuse its discretion in interrupting defense counsel during his opening statement and telling him that he was "arguing to the jury" when counsel stated that defendant "is convinced that you will find that he's not guilty" and again when counsel stated that the evidence will show "one thing about which there is no disagreement." However, the trial court did abuse its discretion in interrupting counsel and classifying as argument his statement asking the jury to consider each piece of evidence carefully, but such error was not prejudicial. N.C.G.S. § 15A-1221(a)(4) (1988); Rule 9, General Rules of Procedure for Superior and District Courts.

6. **Criminal Law § 102.5— question about "rolling" cigarette—absence of prejudice**

The prosecutor's question to a witness as to whether defendant "rolled" a cigarette was not prejudicial, even if it implied the use of an illegal substance, where defendant admitted at trial that he smoked marijuana, took Valium and drank heavily on the day in question.

7. **Criminal Law § 102.5— improper question by prosecutor—absence of prejudice**

Assuming the prosecutor's question to a witness, "You didn't see another diaper in the room anywhere?" erroneously

permitted the prosecutor in essence to testify about items in the room, the court's allowance of such question was not prejudicial to defendant.

**8. Criminal Law § 86.1— credibility of defendant—events day before crime**

The State's questioning of witnesses about events which occurred the day before the crimes for which defendant was on trial was properly permitted for consideration by the jury on the issue of defendant's credibility.

**9. Constitutional Law § 81— consecutive life sentences—no cruel and unusual punishment**

Consecutive life sentences imposed on defendant for first degree rape and first degree sexual offense were not grossly disproportionate because the crimes were committed within moments of each other and thus did not constitute cruel and unusual punishment.

Judge PHILLIPS concurs in the result.

APPEAL by defendant from *Wood (William Z.), Judge*. Judgment entered 15 January 1988 in Superior Court, SURRY County. Heard in the Court of Appeals 7 December 1988.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Clarence J. DelForge, III, for the State.*

*Mills & Rives, by Hugh C. Mills, for defendant-appellant.*

GREENE, Judge.

Defendant was indicted for the offense of statutory rape, N.C.G.S. Sec. 14-27.2 (1986), and the offense of first-degree sexual offense, N.C.G.S. Sec. 14-27.4 (1986). The defendant pled not guilty and was found guilty by a jury on both charges. The defendant was sentenced to two consecutive life sentences. Defendant appeals.

At trial the State's evidence tended to show the following: On 14 April 1987 the alleged victim was approximately twenty-three months old. The mother of the alleged victim, Tammy Sizemore, was a girl friend of the defendant. On 14 April 1987 at approximately 5:30 p.m., the defendant came to the apartment in Mount Airy, North Carolina where Tammy Sizemore, her minor daughter, her brother Billy and Billy's girl friend lived. The defendant entered

the apartment after having used alcohol, marijuana, and other substances. The defendant then had a short conversation with Tammy Sizemore and when she went into the bathroom and began taking a bath, the defendant went into the bedroom where the minor child was sleeping and had vaginal and anal intercourse with her. After the mother of the child heard the child crying, she came from the bathroom and found the child bleeding and prepared to take the child to the doctor. The defendant was in the living room area of the apartment and remained there after the child was taken to the hospital and was there when Detective Larry Reeves of the Mount Airy Police Department arrived, placed him under arrest, and took him to the Mount Airy Police Department. At the police department, the defendant was questioned by Detective Reeves and voluntarily surrendered his underwear.

At trial the State introduced as evidence the sheet on which the minor child was found by its mother, a sweater which contained bloodstains, a diaper and various items of clothing worn by the minor child on the date of the alleged acts. Lucy Milks, a forensic serologist at the State Bureau of Investigation, testified that the blood samples on the underwear taken from the defendant were the same as the blood type of the minor child. Dr. Tom Vaughn of Mount Airy testified he was the physician who examined the minor child on 14 April 1987 and that entry had been made into her vagina and anus by foreign objects and in his opinion the foreign object was a penis.

The defendant's evidence tended to show the following: On 14 April 1987 the defendant did in fact go to the apartment of Tammy Sizemore about 5:30 p.m. and that when the defendant entered the apartment he found Tammy Sizemore very upset. She was crying and on more than one occasion told the defendant "You had better leave." The defendant sat down in the living room area, had a conversation with Tammy Sizemore, and noticed that her minor child was crying in the bedroom. When Tammy Sizemore walked into the kitchen area the defendant went into the bedroom and found the minor child bleeding. Defendant had taken off his pants in the living room area before sitting down and when he walked into the bedroom he immediately picked up the small child and got blood on his underwear at that time. The defendant then handed the child to her mother and told Tammy Sizemore to take the child to the hospital. Tammy Sizemore was getting the child ready to leave to seek medical treatment when Kim Browder, the

girl friend of Tammy Sizemore's brother, came into the apartment. Kim Browder and Tammy Sizemore then left the apartment and took the minor child to the hospital. The defendant remained at the apartment until he was subsequently arrested. On the way to the police station, he was taken to Northern Hospital of Surry County where the minor child was being treated. He was allowed to go into the hospital to see how the minor child was doing. Afterwards he was taken into custody and was questioned by Detective Larry Reeves.

---

The eight questions presented for review are whether the trial court: I) erred in denying defendant's pre-trial motion for appointment of expert psychiatric assistance; II) erred in denying defendant's motion *in limine* to prohibit the State from referring to statements defendant may have made before the crime date about his preference for sex with virgins; III) erred in failing to respond to the objection of the defendant when the State's attorney called the defendant an "animalistic human being" during closing arguments; IV) erred in admitting the testimony of a witness regarding out of court statements to corroborate the witness's own testimony; V) erred in restricting counsel from arguing during opening statements; VI) erred in allowing the State to ask allegedly leading questions; VII) erred in allowing the State to cross-examine the defendant about events which occurred the day before the crimes were committed; VIII) erred in sentencing the defendant to two consecutive life sentences on the ground that such sentencing constitutes cruel and unusual punishment in violation of the North Carolina and United States Constitutions.

I

[1] Defendant contends the trial court committed prejudicial error in denying his motion for appointment of a psychiatrist. Specifically, the defendant, determined by the court to be indigent, requested the appointment of a "qualified psychiatrist" authorized to

> examine the medical condition of the Defendant and to conduct the clinical, standard psychological, and other tests necessary, including but not limited to a penial plethismograph [sic], for the purpose of examining the Defendant and assisting the Defendant in evaluating, preparing, and presenting his defense; and that the costs of such testing be paid by the State of North Carolina because of Defendant's indigency.

STATE v. FREEMAN

[93 N.C. App. 380 (1989)]

Under N.C.G.S. Sec. 7A-450(b) (1986), the State must provide an indigent defendant "with counsel and other necessary expenses of representation." Our Supreme Court has interpreted this provision to require the appointment of expert assistance only upon a showing by the defendant that: "(1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." *State v. Wilson*, 322 N.C. 117, 125, 367 S.E. 2d 589, 594 (1988); *see also State v. Lloyd*, 321 N.C. 301, 318, 364 S.E. 2d 316, 327 (1988) (for expert assistance at sentencing phase, these requirements have been interpreted as requiring defendant to make showing that a mitigating circumstance relating to his mental condition will be a significant factor at sentencing). The showing by the defendant must be "particularized" and "undeveloped assertions that the requested assistance would be beneficial" are insufficient. *State v. Artis*, 316 N.C. 507, 512-13, 342 S.E. 2d 847, 851 (1986). In determining whether the trial court erred in denying the defendant's motion, focus "must be upon what was before the trial court at the time of the motions." *Wilson*, 322 N.C. at 126, 367 S.E. 2d at 594.

An examination of this record shows that at the time the trial court denied the defendant's motion, the defendant had argued in his affidavit that the appointment of a psychiatrist would assist the defendant in "evaluating, preparing, and presenting his defense." At the presentation of the motion to the trial court, the defendant's counsel argued the evidence obtained by an appointed psychiatrist could be used in the "guilt or innocence phase of the trial . . . [and] also . . . in the sentencing phase." At one point in the argument, the defendant's counsel argued that if the psychiatrist determined the defendant was not a pedophiliac (person with a paraphilia in which children are the preferred sexual object), it "would be evidence of his physical makeup, his physical reactions and his mental condition, which would be used to show that he was not inclined on this occasion to favor children of the age of the alleged victim."

Considering everything the defendant's counsel had to offer to the trial court in support of his motion for the appointment of a psychiatrist, we find "little more than undeveloped assertions that the requested assistance would be beneficial," *Artis*, 316 N.C. at 512, 342 S.E. 2d at 851, and these assertions are not sufficiently particularized. Therefore, we find the trial court did not err in denying the defendant's motion for appointment of a psychiatrist.

## II

[2] The defendant argues the trial court erred in denying his motion *in limine* to prohibit the State from referring to statements defendant may have made before the crime date about his preference for "sex with virgins." As the assignment of error set forth in the defendant's brief relating to this particular argument is not pertinent to the question argued, the assignment of error set out in the brief is abandoned. App. R. 28(b)(5) ("[i]mmediately following each question shall be a reference to the assignments of error and exceptions *pertinent to the question . . . .*" (emphasis added)). The exceptions and assignment of error pertinent to the question argued in the brief are likewise abandoned as they are not set out in the brief. *Id.* ("Assignments of error not set out in the appellant's brief . . . will be taken as abandoned.")

## III

[3] Defendant next assigns as error the trial court's failure to respond to the objection of the defendant when the State's attorney called the defendant an "animalistic human being" during closing arguments.

Our appellate courts ordinarily will not "review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Taylor*, 289 N.C. 223, 227, 221 S.E. 2d 359, 362 (1976). Here, the prosecution made this remark in attempting to draw an analogy between a dog leaving tracks in the snow and the numerous bits of circumstantial evidence leading to defendant's guilt. We therefore hold that the statement taken in context was not "clearly calculated to prejudice the jury in its deliberations" nor was the remark so extreme as to warrant our review of the trial judge's discretion.

## IV

[4] The defendant next contends the trial court erred in overruling the defendant's objections to the following questions asked by the district attorney of Tammy Sizemore:

Q. Were you present with Lisa Robertson, one of the witnesses Mr. Hugh Mills has asked you about?

A. Yes.

Q. Did she tell you in our presence that she didn't say anything about you leaving the apartment and going to the store?

A. Yeah.

MR. MILLS: Objection. That's not going to be corroborated at all that I know of.

THE COURT: Overruled.

Specifically, the defendant argues the evidence was inadmissible hearsay and was "elicited by the State in an effort to undercut the Defendant's argument that Tammy Sizemore may have left the apartment and allowed something to happen to her minor child." The State, however, argues the testimony is not hearsay as it "was not offered to prove the truth of the matter asserted but merely to corroborate Tammy's own in-court testimony." Tammy Sizemore did testify that she never told Lisa Robertson that she left the apartment to go to the store.

Testimony which may be hearsay is nonetheless admissible for the non-hearsay purpose of corroboration if it in fact corroborates the witness's testimony. *State v. Locklear*, 320 N.C. 754, 761, 360 S.E. 2d 682, 686 (1987). However, while a witness may corroborate herself, she may not do so with the "extra-judicial declarations of someone other than the witness purportedly being corroborated." 1 Brandis on North Carolina Evidence, Sec. 52 at 243 (3d ed. 1988); *see also State v. Pearce*, 296 N.C. 281, 287, 250 S.E. 2d 640, 645 (1979) (witness may "corroborate herself by testifying that she had made a statement to another person"); *State v. McAdoo*, 35 N.C. App. 364, 367, 241 S.E. 2d 336, 338, *disc. rev. denied*, 295 N.C. 93, 244 S.E. 2d 262 (1978) (witness not permitted to testify as to "another person's extra-judicial statements" even though it would have corroborated the witness's own testimony); *but see Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 481, 157 S.E. 2d 131, 139 (1967) (statement of witness as to extrajudicial declaration of plaintiff was admitted for purpose of corroboration); 1 Brandis on North Carolina Evidence, Sec. 52 at 244 (3d ed. 1988) ("[h]owever, in a few cases declarations of others, though ordinarily inadmissible under the hearsay rule, have been admitted to corroborate a witness").

As the witness, Tammy Sizemore, was attempting to corroborate her own testimony with an extrajudicial statement of Lisa Robertson, the trial court erred in overruling the objection. However,

such error does not require a new trial unless the appellant can show he suffered prejudice as a result of the error. *State v. McKnight,* 87 N.C. App. 458, 465, 361 S.E. 2d 429, 433 (1987), *disc. rev. denied,* 321 N.C. 477, 364 S.E. 2d 663 (1988). This burden may be met by showing there is a reasonable possibility a different result would have resulted had the error not been committed. N.C.G.S. Sec. 15A-1443(a) (1988); *State v. Weeks,* 322 N.C. 152, 163, 367 S.E. 2d 895, 902 (1988). The defendant has not shown the error was so prejudicial that without the error it is likely a different result would have been reached.

V

[5]  The defendant argues the trial court committed prejudicial error by limiting as it did the manner and extent of defense counsel's opening statement. Specifically, three times during defense counsel's opening statement, the court interrupted the lawyer and told him in open court "you're arguing to the jury."

N.C.G.S. Sec. 15A-1221(a)(4) (1988) provides that in a criminal jury trial "[e]ach party must be given the opportunity to make a brief opening statement . . . ." The statute does not define the scope of the opening statement allowed. *State v. Paige,* 316 N.C. 630, 646, 343 S.E. 2d 848, 858 (1986). However, in *Paige,* 316 N.C. at 648, 343 S.E. 2d at 858, our Supreme Court quoted with approval a portion of *State v. Elliott,* 69 N.C. App. 89, 93, 316 S.E. 2d 632, 636, *disc. rev. denied, appeal dismissed,* 311 N.C. 765, 321 S.E. 2d 148 (1984), in which this Court addressed the scope of the opening statement authorized by N.C.G.S. Sec. 15A-1221(a)(4):

> While the exact scope and extent of an opening statement rest largely in the discretion of the trial judge, we believe the proper function of an opening statement is to allow the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it. *See generally,* 23 A[sic]C.J.S., *Criminal Law,* Sec. 1086 (1961). It should *not be permitted to become an argument* on the case or an instruction as to the law of the case.

*Paige,* 316 N.C. at 648, 343 S.E. 2d at 859 (quoting *Elliott,* 69 N.C. App. at 93, 316 S.E. 2d at 636) (emphasis added).

The scope and extent of an opening statement are admittedly vague and must be determined in light of the purpose of opening statements:

> The purpose of an opening statement is to permit the parties to present to the judge and jury the issues involved in the case and to allow them to give a general forecast of what the evidence will be.

*State v. Gladden*, 315 N.C. 398, 417, 340 S.E. 2d 673, 685, *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed. 2d 166 (1986). Furthermore, trial counsel should generally be "afforded wide latitude in the scope of the opening statement." *Id.*

With the general guidelines enunciated in *Elliott, Paige* and *Gladden*, it is clear that "asking the jury to resolve disputes, make inferences, or interpret facts favorable to the speaker. . . ." are agumentative remarks and therefore prohibited. J. Tanford, *The Trial Process* 271 (1983). However, counsel is permitted in his opening remarks something more than just a limited preview of his evidence and should be allowed to state his "legal claim or defense in basic terms." *Id.; see also Paige*, 316 N.C. at 648, 343 S.E. 2d at 859 (permissible for counsel in opening statement to state that defendant "would rely on the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt"); Rule 9 of the General Rules of Procedure for the Superior and District Courts (in opening statement counsel may set forth "grounds for his claim or defense"). Nonetheless, in previewing the evidence, counsel generally should not (1) refer to inadmissible evidence, *see Gladden*, 315 N.C. at 417, 340 S.E. 2d at 685, (2) "exaggerate or overstate" the evidence, *Tanford*, at 272, or (3) discuss evidence he expects the other party to introduce. *Id.* When a party does not intend to offer evidence, he nonetheless may in his opening statement "point out to the jury facts which he reasonably expects to bring out on cross-examination." *Paige*, 316 N.C. at 648, 343 S.E. 2d at 859.

We now determine whether the trial court abused its discretion in interrupting defendant's counsel and classifying the remarks as "argument." The first statement of counsel which the trial court classified as argument was as follows:

> MR. MILLS: . . . And when you hear a piece of evidence I hope you will remember where it was located as you went

along this roadway. And after you do that Mr. Freeman is *convinced that you will find that he's not guilty.* So in that regard we ask you to consider what you find as you go through—

(emphasis added). In this statement counsel was expressing his client's conviction that the jury would find him not guilty. This is in the nature of an argument and is more appropriately reserved for final jury argument. Accordingly, the trial court did not abuse its discretion in interrupting the defendant's counsel and telling him that he was "arguing to the jury."

Next, the defense counsel stated:

MR. MILLS: The evidence will show, ladies and gentlemen, *one thing about which there is no disagreement*—

THE COURT: Now, you're arguing to the jury about what's disagreement. You just tell them what your evidence is going to be.

(emphasis added). Here the defendant's counsel was expessing his opinion as to whether there was any disagreement about the evidence. This goes beyond the permissible scope of an opening statement and is in the nature of an argument. Again the trial court did not abuse its discretion in classifying this statement as argument.

Finally, the defendant's counsel stated:

MR. MILLS: . . . This is not an argument, or is not intended to be. As I stated in the beginning, a road map of what the defendant's evidence will show. *We ask that you consider each piece of this evidence carefully.*

THE COURT: Now you're arguing.

MR. MILLS: And that's as much as I will say at this point. I thank you for your attention.

(emphasis added). Here the defendant's counsel was asking the jury only to consider each piece of the evidence carefully. We find nothing argumentative in that statement nor do we find that it violates any other rules relating to opening statements. Accordingly, the trial court abused its discretion in interrupting the trial

STATE v. FREEMAN

[93 N.C. App. 380 (1989)]

counsel and classifying this as argument. Nonetheless, the error is not prejudicial as the defendant has not met his burden of showing that "had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. Sec. 15A-1443(a) (1988) (burden is on defendant to show prejudicial error).

## VI

The defendant contends the court committed reversible prejudicial error by allowing the State's attorney to lead Tammy Sizemore during direct examination. The two questions defendant objects to as leading are: "Did he make a cigarette, smoke a cigarette, roll a cigarette?" and "You didn't see another diaper in the room anywhere?"

A leading question is one which suggests the desired response and may often be answered yes or no. *State v. Riddick*, 315 N.C. 749, 755, 340 S.E. 2d 55, 59 (1986). Rulings "on the use of leading questions are discretionary and reversible only for an abuse of discretion." *Id.* at 756, 340 S.E. 2d at 59.

[6] Defendant first argues he was prejudiced by the question using the term "roll a cigarette" because it amounted to the district attorney's testimony that the defendant may have engaged in some type of illegal activity by rolling the cigarette. The defendant argues that the "common usage of this term implies that marijuana or some other illegal substance may have been rolled into a cigarette and used by defendant." We conclude this question did not prejudice the defendant as the defendant himself during the trial admitted that he had smoked marijuana, taken Valium and drunk heavily on the day in question.

[7] The defendant next argues that the question "You didn't see another diaper in the room anywhere?" was prejudicial error as it permitted the district attorney in essence to testify about items that may have been located in the bedroom. Assuming this leading question was error, it was harmless on the facts of this case as the defendant has not met his burden of showing there was a reasonable possibility a different result would have been reached had the error not been committed. *Weeks*, 322 N.C. at 163, 367 S.E. 2d at 902.

## VII

[8] Defendant next contends the trial court erred when it overruled defendant's objection to the repeated and continuous ques-

tions by the State about events of and times during 13 April 1987, the day before the crime, because such events were irrelevant and were in fact brought out only in an attempt to confuse the jury and did in fact confuse the jury. After the defendant objected to the line of questioning, the trial judge stated that "it goes to credibility." We find this assignment of error to be completely without merit.

The trial court generally has wide discretion in admitting evidence which it determines would be helpful to a jury's appraisal of credibility. *State v. Stills*, 310 N.C. 410, 415, 312 S.E. 2d 443, 446 (1984). The trial court did not abuse its discretion here in allowing questioning on events of 13 April 1987. The defendant during direct examination contradicted or denied much of the testimony offered by several different witnesses. Therefore, the jury was entitled to hear evidence bearing on the defendant's credibility in order to reach a proper verdict.

## VIII

[9] The defendant finally argues the trial court committed reversible prejudicial error when the court sentenced the defendant to consecutive life sentences because such sentences constitute cruel and unusual punishment.

Defendant acknowledges that our Supreme Court has found that a mandatory life sentence for first-degree rape and a mandatory life sentence for first-degree sexual offense do not constitute cruel and unusual punishment. *See State v. Peek*, 313 N.C. 266, 276, 328 S.E. 2d 249, 255-56 (1985); *State v. Higginbottom*, 312 N.C. 760, 764, 324 S.E. 2d 834, 837 (1985). However, the defendant argues that consecutive life sentences for acts which may have occurred within a very few moments of each other is punishment grossly disproportionate to the acts and therefore cruel and unusual.

We need therefore to determine whether the imposition of consecutive life sentences against the defendant resulted in a punishment so grossly disproportionate to the crimes committed that it violates the Eighth Amendment. "The imposition of consecutive life sentences, standing alone, does not constitute cruel or unusual punishment." *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E. 2d

STATE v. FREEMAN

[93 N.C. App. 380 (1989)]

436, 441 (1983). The jury convicted defendant of two specific and distinct criminal acts. The "acts constitute some of the most serious crimes recognized by our statutes." *Id.* at 787, 309 S.E. 2d at 441. Defendant received the mandatory life sentence for each offense. "There was also no evidence indicating that the offenses were committed negligently or under duress or provocation." *Id.* Furthermore, a "review of multiple offense cases in which a rape was committed reveals that consecutive sentences are frequently imposed." *Id.* Accordingly, consistent with *Ysaguire*, defendant's consecutive sentences do not represent cruel and unusual punishment in North Carolina and "we find nothing so grossly disproportionate in this sentencing judgment for these criminal offenses to justify our upsetting via the Eighth Amendment the traditional sentencing prerogatives of the Legislature and the trial court." *Id.*

IX

Other assignments of error entered by the defendant in the record which have not been argued or correctly preserved are abandoned. App. R. 28(a) and (b)(5).

No error.

Judge COZORT concurs.

Judge PHILLIPS concurs in the result.