STATE OF NORTH CAROLINA v. DONQUELL RENARD SPELLER

No. 505A95

(Filed 7 March 1997)

1. **Constitutional Law § 344.1 (NCI4th Rev.)— capital murder (life sentence)—bench conferences—defendant not present**

The trial court did not violate a first-degree murder defendant's state and federal constitutional rights by conducting ten unrecorded bench conferences at which defendant was not personally present where defendant was represented by counsel at each of the conferences. He was in position to observe the context of the conferences and to inquire of his attorneys as to the

STATE v. SPELLER

[345 N.C. 600 (1997)]

nature and substance of each one. Defendant had a firsthand source as to what transpired and defense counsel had the opportunity and obligation to raise for the record any matter to which defendant took exception. Defendant has failed to demonstrate that the bench conferences implicated his constitutional right to be present or that his presence would have substantially affected his opportunity to defend.

**Am Jur 2d, Criminal Law § 916.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

**Right of accused to be present at suppression hearing or at other hearing or conference between court and attorneys concerning evidentiary questions. 23 ALR4th 955.**

2. **Criminal Law § 514 (NCI4th Rev.)— first-degree murder— bench conferences—complete record**

Unrecorded bench conferences did not violate a first-degree murder defendant's right to a complete recordation of proceedings in a capital case pursuant to N.C.G.S. § 15A-1241, which requires a complete record of "all statements from the bench." "Statements from the bench" does not include routine bench conferences between the trial court and the attorneys.

**Am Jur 2d, Trial §§ 236-239.**

**Failure or refusal of state court judge to have record made of bench conference with counsel in criminal proceeding. 31 ALR5th 704.**

3. **Criminal Law § 423 (NCI4th Rev.)— first-degree murder— prosecutor's opening remarks—scope exceeded—not grossly improper**

Remarks by a prosecutor in her opening statement in a first-degree murder prosecution exceeded the proper limited scope of an opening statement but were not so grossly improper as to merit a new trial where the prosecutor began with a quote from the Bible, invited jurors to put themselves in the place of the victim and project their fears of violent crime onto the victim, commented on the heroics of the victim, emphasizing that he was outnumbered three to one, asked for sympathy for the victims's

"beautiful young widow," and continued her emotional pleas to the jury despite repeated admonitions to stick to the evidence. The trial court did not abuse its discretion in controlling the prosecutor's opening statement because it sustained defense counsel's objections, repeatedly admonished the prosecutor in open court, and twice instructed the jury to disregard the prosecutor's statements. The remarks were not so grossly improper as to deprive defendant of a fair trial despite the trial court's rulings and repeated warnings.

**Am Jur 2d, Trial §§ 554-556.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

4. **Extradition § 26 (NCI4th)— first-degree murder in North Carolina—voluntary return to North Carolina—requirement of warrant and rights**

The trial court in a first-degree murder prosecution did not lack jurisdiction where, after the robbery and murder, defendant went to a hospital in his hometown of Cheraw, South Carolina to receive treatment for his gunshot wound, defendant was questioned while there by police officers, and he eventually signed a waiver of extradition and was transported back to Hamlet by Hamlet police officers. Although defendant contends that the extradition is not effective because the Governor did not issue a warrant and defendant was not informed of his rights, as is statutorily required, the record establishes that defendant was advised of his rights, including the right to issuance and service of a warrant of extradition and that he voluntarily consented to return. N.C.G.S. § 15A-746 governs the procedure for securing the delivery of an accused from North Carolina to a demanding state rather than returning someone accused here to North Carolina. While N.C.G.S. § 15A-742 provides a procedure for the Governor to demand the return of a person charged with a crime, nothing suggests that this is exclusive and precludes the voluntary return of the accused.

**Am Jur 2d, Criminal Law §§ 338-341.**

**Validity, in state criminal trial, of arrest without warrant by identified peace officer outside of jurisdiction, when not in fresh pursuit. 34 ALR4th 328.**

STATE v. SPELLER

[345 N.C. 600 (1997)]

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Helms (William H.), J., at the 15 May 1995 Criminal Session of Superior Court, Richmond County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment of imprisonment entered upon his conviction for robbery with a firearm was allowed 22 November 1996. Heard in the Supreme Court 12 February 1997.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by J. Michael Smith, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was tried capitally for the first-degree murder of William Larry Brown, Jr., and for the robbery of Brown with a firearm. The jury found him guilty of first-degree murder on the basis of malice, premeditation, and deliberation and under the felony murder rule, and recommended a sentence of life imprisonment. The trial court accordingly sentenced defendant to life imprisonment on the first-degree murder conviction and to forty years' imprisonment for robbery with a firearm, to run consecutive to the sentence for murder.

The State's evidence at trial tended to show that three black males were seen running from the Sandhill Pawn and Jewelry shop in Hamlet, North Carolina, around 4:20 p.m. on 5 April 1993. The men got into a white Ford automobile parked in front of the shop. Brown, the proprietor, came to the door of the shop with a gun and fired it, shattering the windshield of the car. The driver of the car returned fire before fleeing in the direction of Cheraw, South Carolina. Brown's wife and a friend found Brown later, lying on the floor of his shop in a pool of blood. When asked what had happened, Brown replied that he had been shot by three black men. Brown died a few hours later from a gunshot wound to the abdomen.

William Hogan, who worked at a nearby Western Auto Store, testified that he went into the pawn shop after hearing gunshots from within. He saw Brown lying behind the counter with his shirt soaked in blood. Brown appeared to have been beaten. He had a black eye, the side of his face and nose were black, and his face was puffy.

Hogan also noticed that the boxes where Brown ordinarily kept shot-guns and pistols intended for sale were empty.

James Poe testified for the State that he was with defendant and another man, Anthony Campbell, at the time of the murder and robbery. Poe stated that he, defendant, and Campbell went into the pawn shop under the pretense of looking for guns. When they reached the counter, Brown was standing there, and defendant put a gun to his head. Brown grabbed the gun, and a brawl ensued. Campbell hit Brown in the face, and defendant threw him to the floor. According to Poe, defendant then said, "you shouldn't have done that," and shot Brown in the stomach while he lay on the floor.

Poe testified that he took four guns from the display case and that he and Campbell left the store and got into the white Ford automobile. Defendant came out of the shop a moment later and got into the driver's seat. Before defendant could get the car started, however, Brown came out of the shop and shot at the car, hitting defendant in the shoulder. Defendant shot back through the car window and then fled in the direction of Cheraw, South Carolina. Defendant was later driven to a hospital in Cheraw to get treatment for his gunshot wound.

Defendant testified on his own behalf that he went to Brown's shop to pawn a stolen gun and that Brown mistakenly thought he was being robbed. Defendant stated that the gun accidently discharged while he and Brown were struggling.

**[1]** By his first assignment of error, defendant argues that the trial court violated his state and federal constitutional rights by conducting ten unrecorded bench conferences at which defendant was not personally present. Although present in the courtroom and represented by counsel at the conferences, defendant nevertheless contends that his absence from the bench conferences violated his constitutional right to be present at every stage of the proceedings.

Defendant asserts that this issue is controlled by *State v. Exum*, 343 N.C. 291, 470 S.E.2d 333 (1996). In *Exum*, the trial court conducted an in-chambers conference with the attorneys at the conclusion of testimony from the defendant's psychiatric expert. The substance of the conference was not recorded, and defendant was not present. Based on these circumstances, this Court held that "where the defendant has a constitutional right to be present at a critical stage of his trial and the trial court conducts private conferences or discussions in the defendant's absence, but the substance of the

private discussions is not revealed in the record, a new trial is required." *Id.* at 296, 470 S.E.2d at 335. Significantly, however, the trial court had conducted both bench conferences and in-chambers conferences in the defendant's absence, yet this Court addressed only the in-chambers conferences. *Id.* at 293, 470 S.E.2d at 334. Hence, the rule pertaining to bench conferences established in *State v. Buchanan*, 330 N.C. 202, 410 S.E.2d 832 (1991), remains intact.

In *Buchanan*, the trial court conducted eighteen bench conferences with defense counsel and counsel for the State. Although present in the courtroom, the defendant was not included in the conferences. After extensive analysis of the federal courts' treatment of such conferences, as well as North Carolina constitutional jurisprudence, this Court concluded that a defendant's constitutional right "to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties." *Id.* at 223, 410 S.E.2d at 845. The burden is on the defendant to show the usefulness of his presence in order to prove a violation of his right to presence. *Id.* at 224, 410 S.E.2d at 845.

Like the defendant in *Buchanan*, defendant here was represented by counsel at each of the conferences. He was in a position to observe the context of the conferences and to inquire of his attorneys as to the nature and substance of each one. Despite his absence, defendant had a firsthand source as to what transpired, and defense counsel had the opportunity and obligation to raise for the record any matter to which defendant took exception. On these facts, defendant has failed to demonstrate that the bench conferences implicated his constitutional right to be present or that his presence would have substantially affected his opportunity to defend. The trial court therefore did not err in conducting the bench conferences with the attorneys out of the hearing of defendant.

[2] Defendant further argues that the unrecorded bench conferences violated his right to a complete recordation of the proceedings in a capital case pursuant to N.C.G.S. § 15A-1241, which provides in pertinent part: "The trial judge must require that the reporter make a true, complete, and accurate record of all statements from the bench." N.C.G.S. § 15A-1241(1) (1988). We have held that "statements from the bench" do not include routine bench conferences between the trial court and the attorneys. *State v. Cummings*, 332 N.C. 487, 497, 422 S.E.2d 692, 697 (1992). This assignment of error is therefore overruled.

[3] Defendant next contends that the trial court did not properly control the prosecutor during her opening statements to the jury and that her actions severely prejudiced the remainder of defendant's trial. The prosecutor began her opening statement with a quote from the Bible. Thereafter, on several occasions, she invited the jurors to put themselves in the place of the victim and to project their fears of violent crimes onto the victim. She further commented on the heroics of the victim, emphasizing that he was outnumbered three to one, and asked for sympathy for the victim's "beautiful young widow." Despite repeated admonitions from the trial court to "stick to the evidence," the prosecutor continued her emotional pleas to the jury. Defendant contends that it is impossible to calculate the impact of such manifest misconduct and that he is therefore entitled to a new trial.

The State concedes that the prosecutor departed from ordinary and acceptable standards for opening remarks but asserts that the statements were not so grossly improper as to deprive defendant of a fair trial. We agree. The record indicates that defense counsel objected seventeen times during the prosecutor's opening statement. Of the ten objections that were sustained, the trial court admonished the prosecutor on four occasions, instructed the jury to disregard her statements on two occasions, and simply sustained without comment the four other objections. Of the remaining seven objections, two were overruled, three were not passed upon, and on two occasions counsel were instructed to approach the bench for an unrecorded conference. Defendant does not complain about any of the trial court's rulings concerning defense counsel's objections. Rather, he simply contends that the trial court committed prejudicial error by failing to "enforce" its rulings.

The control of opening statements rests in the discretion of the trial court. State v. Gibbs, 335 N.C. 1, 40, 436 S.E.2d 321, 343 (1993), cert. denied, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). Because the trial court sustained defense counsel's objections, repeatedly admonished the prosecutor in open court, and twice instructed the jury to disregard the prosecutor's statements, we conclude that the trial court did not abuse its discretion in controlling the prosecutor's opening statement.

The State suggests, and we concur, that the real issue is whether the prosecutor's remarks were so grossly improper as to deprive defendant of a fair trial, despite the trial court's rulings and repeated warnings. " '[T]he proper function of an opening statement is to allow

the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it.' " *State v. Paige*, 316 N.C. 630, 648, 343 S.E.2d 848, 859 (1986) (quoting *State v. Elliott*, 69 N.C. App. 89, 93, 316 S.E.2d 632, 636, *disc. rev. denied and appeal dismissed*, 311 N.C. 765, 321 S.E.2d 148 (1984)). "[I]n previewing the evidence, counsel generally should not (1) refer to inadmissible evidence, (2) 'exaggerate or overstate' the evidence, or (3) discuss evidence he expects the other party to introduce." *State v. Jaynes*, 342 N.C. 249, 282, 464 S.E.2d 448, 468 (1995) (quoting *State v. Freeman*, 93 N.C. App. 380, 389, 378 S.E.2d 545, 551 (citations omitted), *disc. rev. denied*, 325 N.C. 229, 381 S.E.2d 787 (1989)), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1080 (1996). After careful review of the prosecutor's remarks, we conclude that while they exceeded the proper limited scope of an opening statement, they were not so grossly improper as to violate any of these principles, thereby meriting a new trial. This assignment of error is overruled.

**[4]** Finally, defendant argues that the trial court lacked jurisdiction and therefore erred in denying defendant's motions to dismiss. He challenges the trial court's jurisdiction on the grounds that the investigating police officers failed to follow the extradition process mandated by the Uniform Criminal Extradition Act.

As noted, defendant went to a hospital in his hometown of Cheraw, South Carolina, to receive treatment for his gunshot wound. While there, defendant was questioned by police officers from Cheraw and from Hamlet, North Carolina. Defendant eventually signed a waiver of extradition and was transported back to North Carolina by the Hamlet police officers. Defendant contends that the Uniform Criminal Extradition Act requires the Governor, when demanding the return of a fugitive from North Carolina, to issue a warrant commanding his agent to receive the person sought and to deliver that person to the appropriate county authority. N.C.G.S. § 15A-742 (1988). Defendant further asserts that pursuant to N.C.G.S. § 15A-746, a waiver of extradition may not be executed until the fugitive is judicially informed of his rights to the issuance and service of a warrant for extradition. Defendant contends that because the Governor did not issue a warrant and defendant was not judicially informed of his rights, his waiver of extradition is legally ineffective, and he must be released from custody.

Defendant's argument fails to recognize that section 15A-746 governs the procedure for securing the delivery of an accused from

North Carolina to a demanding state, not for returning someone accused in North Carolina to this state. Section 15A-746 thus is inapplicable here. While section 15A-742 provides a procedure for the Governor to demand the return of a person charged with a crime in this state, nothing in that statute or the Uniform Criminal Extradition Act as a whole suggests that this procedure is exclusive and precludes the voluntary return of the accused for formal arraignment and trial. The record establishes that defendant was advised of his rights, including the right to issuance and service of a warrant of extradition, and that he voluntarily consented to return to North Carolina. His voluntary return to the state conferred jurisdiction on the Superior Court, Richmond County, as fully and effectively as a Governor's warrant pursuant to section 15A-742 would have. We therefore hold that the Superior Court, Richmond County, properly exercised jurisdiction over this matter.

We conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.