STATE OF NORTH CAROLINA v. SHAWN DERRICK·BONNETT A/K/A
TYRONE WILLIAMS

No. 471A96

(Filed 9 July 1998)

**1. Criminal Law § 78 (NCI4th Rev.)— pretrial publicity— denial of change of venue**

The trial court did not err in the denial of defendant's motion for a change of venue or a special venire in this first-degree murder and robbery trial based on pretrial publicity where (1) several jurors who indicated that they had read or heard about the case stated that they had not formed an opinion about the case, could set aside any information, and could be fair and impartial, and one juror who had formed an opinion and knew the victim stated unequivocally that he could set aside his opinion and base his decision on the evidence, and (2) viewing the totality of the circumstances, there was no reasonable likelihood that the county's population was so infected with prejudice against defendant that he could not receive a fair trial in the county. N.C.G.S. § 15A-957.

**2. Jury § 111 (NCI4th)— pretrial publicity—denial of individual voir dire**

The trial court did not abuse its discretion in the denial of defendant's motion for individual voir dire of prospective jurors in a capital trial based upon pretrial publicity. N.C.G.S. § 15A-1214(j).

**3. Criminal Law § 1324 (NCI4th Rev.)— death penalty— denial of motion to preclude**

The trial court did not err in denying defendant's motion to preclude the State from seeking the death penalty in this first-degree murder trial on the ground that the death penalty would be disparate, disproportionate, excessive, and cruel and unusual punishment under the United States and North Carolina Constitutions.

**4. Jury § 237 (NCI4th)— capital trial—bifurcation or continuance properly denied**

The trial court did not err in denying defendant's motion to bifurcate his capital trial and his alternative motion to continue so that he would not be tried or sentenced until after two codefendants were tried.

**5. Criminal Law § 121 (NCI4th Rev.)— capital charge—arraignment in chambers**

Defendant was not prejudiced by being arraigned on a capital charge in chambers rather than in open court.

**6. Constitutional Law § 343 (NCI4th)— unrecorded conferences—absence of defendant—prior to capital trial—no error**

An unrecorded conference in the judge's chambers that occurred prior to the start of defendant's capital trial without defendant being present did not amount to constitutional or other error.

**7. Constitutional Law § 344.1 (NCI4th)— bench conferences—capital trial—absence of defendant—counsel present—no constitutional violation**

The trial court did not violate defendant's constitutional right to be present at every stage of his capital trial by conducting ten bench conferences outside his presence where defendant was present in the courtroom and was represented by counsel at each conference; nine of the conferences were recorded and eight concerned questions of law; in the remaining recorded conference, the trial court inquired of counsel how best to handle an incident where a reporter had talked to a juror; the only unrecorded conference occurred during voir dire of a prospective juror who was excused for cause because her views would prevent or substantially impair the performance of her duties as a juror; and defendant failed to show how his presence would have served any useful purpose.

**8. Jury § 260 (NCI4th)— peremptory challenges of black prospective jurors—race-neutral reasons**

The trial court's findings that the prosecutor's exercise of peremptory challenges to strike four black prospective jurors in this capital trial was not racially motivated and that the prosecutor had not engaged in purposeful discrimination were not clearly erroneous where (1) the prosecutor excused the first juror because he was equivocal about the effect on his decision of a codefendant testifying pursuant to a plea agreement, the prosecutor was unable to make eye contact with him, and the prosecutor detected a smile or smirk when talking to him; (2) the second juror was excused because he was equivocal about the

death penalty, he was not paying attention when the prosecutor was going through the death penalty issues, the prosecutor was unable to make eye contact with him, and an investigator who would be a witness in the case informed the prosecutor that he had questioned the juror in a felonious larceny case under investigation; (3) the third juror was excused because he was equivocal about the death penalty, the prosecutor had been informed by a law officer who had known the juror for a number of years that one could not depend on what he said, and the juror had been investigated as a suspect in a larceny case several years earlier; and (4) the fourth juror was excused because the prosecutor perceived, from her tone of voice, facial expression and body language, that she had a belligerent attitude or air of defiance which suggested that she would be antagonistic to the prosecution, and that she had emphasized in her questionnaire that she had temporary custody of her grandchildren.

**9. Jury § 203 (NCI4th)— challenge for cause—preconceived opinion—knowledge of victim—ability to set aside opinion**

The trial court did not err in denying defendant's challenge for cause of a prospective juror on the basis that the juror had formed an opinion and knew the victim where the juror stated unequivocally that he could set aside his opinion and base his decision on the evidence, and the juror's responses did not suggest that he would not be a fair and impartial juror or that he could not return a verdict according to N.C.G.S. § 15A-1212(6) and (9).

**10. Jury § 210 (NCI4th)— alternate juror related to victim— denial of challenge for cause—harmless error**

Even if the trial court erred in denying defendant's challenge for cause of an alternate juror who was related within the sixth degree to the victim in this case, this error was harmless where the alternate juror did not serve as one of the twelve jurors who decided defendant's case. N.C.G.S. § 15A-1212(5).

**11. Evidence and Witnesses § 263 (NCI4th)— capital trial— use of defendant's nickname—absence of prejudice**

Assuming that the trial court erred in permitting a witness in this capital murder trial to refer to defendant as "Homicide" when it ruled that the witness did not come within a pretrial order prohibiting the use of the alias "Homicide" by court personnel and law enforcement officers, defendant cannot show any prejudice

in that he lost the benefit of any objection when he failed to object to the prosecutor's reference to defendant as "Homicide," defense counsel used the term "Homicide" on cross-examination, and defendant referred to himself as "Homicide" during the sentencing proceeding. Moreover, it is not error to refer to defendant by a nickname by which he is generally known even if the nickname is demeaning.

**12. Evidence and Witnesses § 1145 (NCI4th)— statements made by codefendant—sufficient evidence of conspiracy— hearsay exception**

The evidence in a first-degree murder and robbery trial was sufficient to meet the State's burden of showing that a conspiracy existed so as to render admissible hearsay statements of a coconspirator during the course and in furtherance of the conspiracy where it tended to show that defendant and his three codefendants went to the victim's store three times to buy beer; the next time they went there, one codefendant stayed in the car while defendant and the other two went inside, shot the victim, took his gun, and stole the money box; and they then drove to a motel, divided up the money, and attempted to take refuge in someone else's house when pursued by the police. Further, the statements of a codefendant in which the codefendants agreed to "hit this store," "stick together whatever happen[s]," and to "smoke the old m-----f-----," along with statements made during the robbery and murder, fall within the hearsay exception for statements made during the course and in furtherance of a conspiracy. N.C.G.S. § 8C-1, Rule 801(d)(E).

**13. Homicide § 552 (NCI4th)— first-degree murder trial— instruction on second-degree murder not required**

Evidence in a first-degree murder trial that defendant and his codefendants had been drinking, that defendant did not plan the murder and robbery of the victim, and that one codefendant did not think the other two codefendants would kill the victim did not require the trial court to instruct the jury on the lesser included offense of second-degree murder since defendant failed to show that his voluntary intoxication rendered him incapable of forming the requisite specific intent, the codefendant's belief was not pertinent to defendant's guilt or innocence, and the State presented evidence of each element of first-degree murder that was positive and uncontroverted.

**14. Criminal Law § 804 (NCI4th Rev.); Homicide § 583 (NCI4th)— acting in concert—specific intent— instructions**

The rule for acting in concert for specific intent crimes stated in *State v. Blankenship*, 337 N.C. 543 (1994), applies to defendant's first-degree murder trial since the crime and judgment occurred subsequent to the decision in *Blankenship* and prior to the decision in *State v. Barnes*, 345 N.C. 184 (1997). The trial court properly instructed the jury on the law of acting in concert in accordance with *Blankenship* where the court emphasized to the jury that in order to find defendant guilty of premeditated and deliberate murder, the jury must find that defendant specifically intended to kill the victim.

**15. Criminal Law § 807 (NCI4th Rev.)— closing argument— aiding and abetting—absence of instruction**

Defendant was not prejudiced by the trial court's allowing the prosecutor to argue "aiding and abetting" to the jury in this capital murder trial when the court was not going to instruct on that theory of guilt since the court instructed on acting in concert and the distinction between a defendant being found guilty of aiding and abetting and acting in concert is of little significance, and the record shows that the evidence supported jury instructions on both aiding and abetting and acting in concert.

**16. Criminal Law § 807 (NCI4th Rev.)— aiding and abetting— mere presence—instruction not required**

The trial court did not err by failing to instruct the jury in a capital murder trial that defendant's mere presence at the scene of the crime is insufficient to support a finding that he was an aider and abettor where the evidence overwhelmingly showed that defendant was not "merely present" at the murder scene but showed that defendant agreed to the robbery and murder of the victim and that he supplied the murder weapon and actively participated by stealing the victim's money box.

**17. Criminal Law § 1367 (NCI4th Rev.)— capital sentencing— aggravating circumstance—murder during armed robbery—conviction based on premeditation and felony murder**

The trial court did not err by submitting to the jury in a capital sentencing proceeding the (e)(5) aggravating circumstance that the murder was committed during the course of an armed

robbery, although the armed robbery served as the underlying felony for defendant's felony-murder conviction, where defendant was also convicted of first-degree murder on the basis of premeditation and deliberation. N.C.G.S. § 15A-2000(e)(5).

**18. Criminal Law § 1364 (NCI4th Rev.)— capital sentencing— prior violent felony aggravating circumstance—accessory after fact to murder and assault**

The trial court did not err in submitting the (e)(3) prior violent felony aggravating circumstance in a capital sentencing proceeding where defendant had been convicted of one count of accessory after the fact to murder and two counts of accessory after the fact to assault with a deadly weapon with intent to kill inflicting serious injury, and two witnesses testified that defendant's convictions for accessary after the fact involved defendant and others shooting guns into a nightclub in 1991.

**19. Criminal Law § 1365 (NCI4th Rev.)— capital sentencing— aggravating circumstance—avoiding arrest**

The trial court did not err in submitting in a capital sentencing proceeding the (e)(4) aggravating circumstance that the murder was committed for the purpose of avoiding or preventing a lawful arrest in that the jury could find that defendant participated in the killing to eliminate a potential witness against him where there was plenary evidence tending to show that, earlier on the day of the murder, defendant and his codefendants had each been inside the victim's store to purchase beer; after defendant and his codefendants agreed to "hit the store," they also agreed to "smoke the old m-----f-----" because the victim would recognize two of the codefendants; and defendant then handed a gun to one codefendant, and defendant and two codefendants went inside the store, killed the victim, and robbed his store. N.C.G.S. § 15A-2000(e)(4).

**20. Criminal Law § 1382 (NCI4th Rev.)— capital sentencing— mitigating circumstance—no significant criminal history— submission not required**

The trial court did not err in failing to submit in this capital sentencing proceeding the (f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity because no reasonable juror could have concluded that defendant's criminal history was insignificant where evidence of defendant's criminal history included a conviction for one count of

STATE v. BONNETT

[348 N.C. 417 (1998)]

accessory after the fact of murder; conviction for two counts of accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury; conviction for felony possession with intent to sell and deliver cocaine, felony conspiracy to sell and deliver cocaine, and illegal use of marijuana; conviction for drug possession and possession of drug paraphernalia in New York; and conviction of larceny of an automobile in New York. N.C.G.S. § 15A-2000(f)(1).

**21. Criminal Law § 1384 (NCI4th Rev.)— capital sentencing— mitigating circumstance—mental or emotional disturbance—submission not required**

The trial court did not err in failing to submit to the jury in a capital sentencing proceeding the statutory mitigating circumstance that defendant was under the influence of a mental or emotional disturbance at the time of the offense where one of defendant's experts testified that testing showed defendant to be disturbed psychologically and to be socially alienated with a poor self-image, insecurity, and feelings of inadequacy, but neither of defendant's experts suggested any nexus between defendant's personality characteristics and the crimes he committed or any mental or emotional disturbance at the time of the killing.

**22. Criminal Law § 1390 (NCI4th Rev.)— capital sentencing— age as mitigating circumstance—submission not required**

The trial court did not err by failing to submit the (f)(7) mitigating circumstance of age to the jury in this capital sentencing proceeding where defendant relied upon evidence that he was twenty-six years old at the time of the murder, was abandoned at birth by his mother, grew up in a dysfunctional family, and had an IQ of 86, a learning disability, a lack of reading skills, and a lack of stability and guidance, but defendant introduced no substantial evidence of his immaturity, youthfulness, or lack of emotional or intellectual development at the time of the crime.

**23. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— requested nonstatutory mitigating circumstance—subsumption by submitted circumstance**

The trial court did not err by refusing to submit defendant's requested mitigating circumstance that "Defendant has not been antagonistic with the therapists" because this circumstance was subsumed by the submitted mitigating circumstance that "Defendant has been cooperative with the therapists."

**24. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— requested nonstatutory mitigating circumstance—refusal to submit—harmless error**

Any error in the trial court's refusal to submit to the jury in a capital sentencing proceeding the mitigating circumstance that "Defendant was not heavily armed" was harmless error where the court submitted the circumstance that "Defendant was not the shooter" and the circumstance that "Defendant did not encourage [a codefendant] to shoot the victim"; all jurors rejected the circumstance that defendant did not encourage the shooting, but at least one juror found that the circumstance "Defendant was not the shooter" existed and had mitigating value; the evidence showed that defendant supplied the gun used to commit the murder; and all the evidence tending to support the requested mitigating circumstance was considered by the jury under the submitted mitigating circumstances as well as under the catchall mitigating circumstance.

**25. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— requested nonstatutory mitigating circumstance—refusal to submit—subsumption by submitted circumstances**

The trial court did not err by refusing to submit the proposed mitigating circumstance that "Defendant will benefit from a structured environment in prison" because it was subsumed by the submitted circumstance that "Defendant will benefit from a structured environment." Nor did the court err by refusing to submit the proposed circumstance that "Defendant is an accomplice like [a codefendant] who sat in the back seat with the [codefendant] whenever they were in the car" because this circumstance was subsumed by the submitted statutory mitigating circumstance that "This murder was actually committed by another person and the defendant was only an accomplice and his participation in the murder was relatively minor." N.C.G.S. § 15A-2000(f)(4).

**26. Criminal Law § 690 (NCI4th Rev.)— capital sentencing— statutory mitigating circumstance—peremptory instruction not warranted**

The evidence regarding the (f)(4) mitigating circumstance that "[t]his murder was actually committed by another person and the defendant was only an accomplice in the murder and his participation in the murder was relatively minor" was not uncon-

troverted and did not warrant a peremptory instruction in this capital sentencing proceeding where there was evidence tending to show that defendant left his house carrying the gun used to kill the victim and handed it to the triggerman just before they entered the victim's store, and that defendant took the victim's money box.

**27. Criminal Law § 1355 (NCI4th Rev.)— capital sentencing— Issues One, Three, Four—unanimity**

The trial court did not err by instructing the jury in a capital sentencing proceeding that it must be unanimous in order to answer "no" to Issues One, Three, and Four.

**28. Criminal Law § 1348 (NCI4th Rev.)— capital sentencing— life sentence as life without parole—instruction**

Where the trial judge complied with the mandate of N.C.G.S. § 15A-2002 by instructing the jury at the beginning of the sentencing charge in this capital sentencing proceeding that "[i]f you unanimously recommend a sentence of life imprisonment, the court will impose a sentence of life imprisonment without parole," the trial judge did not commit error, much less plain error, by not informing the jury that a life sentence means life without parole every time he mentioned a life sentence in the charge.

**29. Criminal Law § 1402 (NCI4th Rev.)— death sentence not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant was found guilty under theories of both premeditation and deliberation and felony murder; the jury found the three submitted aggravating circumstances that defendant had previously been convicted of a felony involving the use or threat of violence to the person, that the murder was committed to avoid or prevent a lawful arrest, and that the murder was committed while defendant was engaged in the commission of an armed robbery; defendant was twenty-six years old at the time of the murder; and the evidence tended to show that defendant supplied the murder weapon and actually took the money box from the victim's store. Defendant's sentence of death was not rendered disproportionate by the fact that two codefendants who were convicted of this murder in a separate trial each received a sentence of life imprisonment where defendant was the same age as one codefendant

and only six years younger than the second codefendant; the jury in defendant's trial found three aggravating circumstances to exist, but the jury found only one aggravating circumstance in the codefendants' trial; and, unlike the two codefendants, defendant had previously been convicted of violent felonies.

Justice ORR did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Everett, J., on 26 September 1996 in Superior Court, Martin County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment for robbery with a dangerous weapon was allowed by the Supreme Court on 17 October 1997. Heard in the Supreme Court 26 May 1998.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Rudolph A. Ashton, III, for defendant-appellant.*

PARKER, Justice.

Defendant Shawn Derrick Bonnett was indicted on 22 January 1996 for the first-degree murder of Robert Stancil Hardison ("victim") and for robbery with a dangerous weapon. Three codefendants, Christopher Moore, Richard Smith, and Jimmy Smith, were also indicted but were not tried together. The jury found defendant guilty of first-degree murder on the bases of premeditation and deliberation and the felony-murder rule. Following a capital sentencing proceeding, the jury recommended a sentence of death; and the trial court entered judgment in accordance with that recommendation. The jury also found defendant guilty of robbery with a dangerous weapon, and the trial court sentenced defendant to a consecutive sentence of 129 to 164 months' imprisonment.

The State's evidence tended to show the following. Between 4:30 and 5:30 p.m. on 4 January 1996, defendant and his codefendants drove to Hardison's General Merchandise, which was owned and operated by the victim and his wife and located in the Farm Life community of rural Martin County outside Williamston, North Carolina. Richard Smith (a/k/a "Joe Raggs") drove a yellow GEO Storm, Jimmy Smith (a/k/a "Little Jimmy") was in the passenger seat, and defendant

and Christopher Moore sat in the rear seats. Moore and Little Jimmy went inside the victim's store to buy some beer. They got back into the car and drove around for five or ten minutes. At approximately 6:30 p.m. they stopped at the store again, and defendant and Moore went inside to buy beer. Another five to ten minutes later, they returned a third time; and Joe Raggs bought some beer. While riding around some more, Little Jimmy said to the others, "we all have to stick together whatever happen[s], because we're, we're about to go ahead and hit this store." After they agreed to "stick together," Joe Raggs said, "We're going to have to smoke the old m-----f-----."

They continued to drive past the store until there were no customers inside. At about 7:30 p.m. they pulled into the store's parking lot, and defendant handed a gun to Little Jimmy. Joe Raggs stayed in the car. Moore and Little Jimmy went to the beer cooler, while defendant stood next to the counter. Little Jimmy placed a beer on the counter; and when the victim approached in order to ring up the sale, Little Jimmy pulled out the gun and shot the victim three or four times. Then Moore took the victim's gun from the victim's back pocket, and defendant took the money box.

They drove to a motel in Greenville and divided up the money. They decided to return to Williamston, and on the way a highway patrolman, who had been given a description and license plate number of the yellow GEO Storm, pursued them. Joe Raggs pulled into the yard of a house, and they all entered the house. Joe Raggs and Little Jimmy decided to go out the front door and were arrested. Moore stayed inside, but he left the house when the police instructed him to do so and was arrested. Defendant escaped through the back door. On 8 January 1996 the police discovered the whereabouts of defendant, and he was arrested without incident.

Defendant presented no evidence at the guilt phase.

Additional facts will be presented as needed to discuss specific issues.

## PRETRIAL ISSUES

[1] By his first assignment of error, defendant contends that pretrial publicity surrounding the murder was so extensive as to require a change of venue or a special venire from another county. He argues that this publicity made it impossible for him to receive a fair trial by a Martin County jury.

N.C.G.S. § 15A-957 provides that if there exists so great a prejudice against the defendant in the county in which he is charged that he cannot obtain a fair and impartial trial, the court must either transfer the case to another county or order a special venire from another county. *State v. Perkins*, 345 N.C. 254, 275, 481 S.E.2d 25, 33, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 64 (1997). The burden is on a defendant to establish that "it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 347 (1983). A defendant must "establish specific and identifiable prejudice against him as a result of pretrial publicity . . . [by showing] *inter alia* that jurors with prior knowledge decided the case, that he exhausted his peremptory challenges, and that a juror objectionable to him sat on the jury." *State v. Billings*, 348 N.C. 169, 177, 500 S.E.2d 423, 428 (1998) (emphasis omitted). The determination of whether defendant has carried his burden lies within the sound discretion of the trial court. *State v. Barnes*, 345 N.C. 184, 204, 481, S.E.2d 44, 54 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134, *and cert. denied*, —— U.S. ——, 140 L. Ed. 2d 473 (1998).

Our review of the record in this case reveals that the trial court did not err in denying defendant's motion for a change of venue or special venire. While several jurors selected indicated that they had read or heard about the case, all but one stated that they had not formed an opinion about the case, could set aside any information, and could be fair and impartial. Juror Bullock, who had formed an opinion and knew the victim, stated unequivocally that he could set his opinion aside and base his decision in this case on the evidence.

However, our examination does not end here. This Court recognized in *Jerrett* that where the totality of the circumstances reveals that a county's population is so "infected" with prejudice against a defendant that he cannot receive a fair trial, the defendant has met his burden. *State v. Jerrett*, 309 N.C. at 258, 307 S.E.2d at 349. In *Jerrett* we noted that "the crime occurred in a small, rural and closely-knit county where the entire county was, in effect, a neighborhood." *Id.* at 256, 307 S.E.2d at 348. The population of Alleghany County was 9,587 people, *id.* at 252 n.1, 307 S.E.2d at 346 n.1; the *voir dire* revealed that one-third of the prospective jurors knew the victim or some member of the victim's family, and many jurors knew poten-

tial State's witnesses, *id.* at 257, 307 S.E.2d at 348-49. Furthermore, the jury was examined collectively on *voir dire*, thus allowing prospective jurors to hear that other prospective jurors knew the victim and the victim's family, that some had already formed opinions, and that some would not be able to give the defendant a fair trial, *id.* at 257-58, 307 S.E.2d at 349.

This case is distinguishable from *Jerrett.* Martin County's population at the time of the crime was over 25,000. *North Carolina Manual 1995-1996*, at 970 (Lisa A. Marcus ed.). Further, the level of familiarity that the *Jerrett* jurors had with the victim, the victim's family, and witnesses is not present in this case. While a number of prospective jurors had heard or read about the case, in viewing the totality of the circumstances, we conclude that there is no reasonable likelihood that pretrial publicity prevented defendant from receiving a fair trial in Martin County and that the trial court did not err by refusing to grant defendant's motion for change of venue or a special venire.

Defendant further contends that included within the totality of circumstances should be the fact that his codefendants' trial was transferred on account of pervasive prejudice. However, codefendants' trial was subsequent to defendant's trial; and publicity from defendant's trial most likely created much of the prejudice against codefendants such that *they* could not obtain a fair and impartial trial in Martin County.

**[2]** Defendant next contends that the trial court erred in denying his motion for individual *voir dire* of prospective jurors. Defendant argues that the pretrial publicity was so great that it was reasonably likely that prospective jurors would make a decision upon pretrial information instead of the evidence presented at trial.

N.C.G.S. § 15A-1214 provides in pertinent part that "[i]n capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j) (1997). The decision to deny individual *voir dire* of prospective jurors rests in the trial court's sound discretion, and this ruling will not be disturbed absent a showing of abuse of discretion. *State v. Barnard*, 346 N.C. 95, 101, 484 S.E.2d 382, 385 (1997).

Defendant has offered no convincing argument that the trial judge abused his discretion in not allowing individual *voir dire.* "A

defendant does not have a right to examine jurors individually merely because there has been pretrial publicity." *State v. Burke*, 342 N.C. 113, 122, 463 S.E.2d 212, 218 (1995). A careful examination of jury selection reveals no harm to defendant resulting from the denial of his motion. We hold that the trial court did not err in denying defendant's motion.

[3] By his next assignment of error, defendant argues that the trial court erred in denying defendant's motion to preclude the State from seeking the death penalty in that, *inter alia*, the death penalty would be disparate, disproportionate, excessive, and cruel and unusual punishment under the United States and North Carolina Constitutions. Defendant acknowledges that this issue has already been decided adversely to him, and we need not consider it further. *See State v. Robinson*, 342 N.C. 74, 88, 463 S.E.2d 218, 226 (1995) (holding that no *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140 (1982), issue arises when defendant was convicted of first-degree murder upon the theory of premeditation and deliberation in addition to the felony-murder theory), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 793 (1996).

[4] Next, defendant contends that the trial court erred in denying his motion to bifurcate and his alternate motion to continue so that defendant would not be tried or sentenced until after Richard Smith and Jimmy Smith were tried. The crux of defendant's concern is that if defendant was tried and sentenced prior to the Smiths' case he might receive a death sentence if convicted; and Richard Smith and Jimmy Smith might receive life sentences at a later trial, which is in fact what occurred. Defendant contends that he was less culpable than the Smiths and that, if sentenced after them, he should be able to argue to his sentencing jury the fact that the Smiths received life sentences.

Defendant concedes that this Court has previously held that a defendant is not entitled to separate jury trials, one to determine guilt or innocence and another to determine punishment, *State v. Holden*, 321 N.C. 125, 133, 362 S.E.2d 513, 520 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988); however, he claims that the facts of this case are distinguishable and warrant the particular relief he seeks. We disagree.

In *State v. Bond* we held that, for purposes of sentencing, the fact that a codefendant received a lesser sentence "was not admissible as a mitigating circumstance because such evidence did not pertain to

'defendant's character, record, or the nature of his participation in the offense.' " *State v. Bond,* 345 N.C. 1, 34, 478 S.E.2d 163, 180 (1996) (*quoting State v. Irwin,* 304 N.C. 93, 104, 282 S.E.2d 439, 447 (1981)), *cert. denied,* —— U.S. ——, 138 L. Ed. 2d 1022 (1997). Thus, this assignment of error is overruled.

[5] By his next assignment of error, defendant argues that by arraigning him in chambers and not in open court, the trial court violated his constitutional right to an open and public trial under Article I, Section 18 of the North Carolina Constitution. Defendant acknowledges that this Court has rejected the *per se* rule that failure to conduct a formal arraignment on a capital charge constitutes reversible error. *State v. Brown,* 315 N.C. 40, 50, 337 S.E.2d 808, 817 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). Further, we hold that defendant has not been prejudiced by being arraigned in chambers, and thus we find no merit to this assignment of error.

[6] Next, defendant contends that the trial judge erred in holding an unrecorded conference without defendant's being present, in violation of his state and federal constitutional rights. Following defendant's arraignment in the judge's chambers, the trial judge stated, "All right. Take the defendant back out there[;] let me see counsel here just a minute." No recording was made of the subsequent conference outside the presence of defendant.

Under the North Carolina Constitution, a defendant in a capital case has an unwaiveable right to be present at every stage of his trial. *State v. Buckner,* 342 N.C. 198, 227, 464 S.E.2d 414, 430 (1995), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 47 (1996). Further, under the United States Constitution, a defendant has a right to be present under the Confrontation Clause as well as a due process right to be present. *Id.*

However, "[n]ot every error caused by a defendant's absence requires reversal as these errors are subject to a harmless-error analysis." *Id.* at 227-28, 464 S.E.2d at 431. In *Buckner* we held that no error, constitutional or otherwise, existed when a conference took place prior to the commencement of defendant's trial. *Id.* at 228, 464 S.E.2d at 431. Since the record clearly indicates that the conference about which defendant complains took place prior to the start of his trial, we likewise find no merit to this assignment of error.

**STATE v. BONNETT**

[348 N.C. 417 (1998)]

## JURY SELECTION ISSUES

**[7]** Defendant next argues that the trial court violated his constitutional rights by conducting ten bench conferences outside his presence. Defendant was present in the courtroom and represented by counsel at these conferences but, nevertheless, contends that his absence from the bench conference violated his constitutional rights to be present at every stage of the proceedings.

In *State v. Speller*, 345 N.C. 600, 481 S.E.2d 284 (1997), the trial court conducted ten unrecorded bench conferences with defense counsel and counsel for the State. Defendant was present in the courtroom but was not included in the conferences. This Court concluded that since (i) "defendant was in a position to observe the context of the conferences and to inquire of his attorneys as to the nature and substance of each one [and] . . . had a firsthand source as to what transpired," (ii) "defense counsel had the opportunity and obligation to raise for the record any matter to which defendant took exception," and (iii) defendant "failed to demonstrate that the bench conferences implicated his constitutional right to be present or that his presence would have substantially affected his opportunity to defend," the trial court "did not err in conducting the bench conferences with the attorneys out of the hearing of defendant." *Id.* at 605, 481 S.E.2d at 286-87; *see also State v. Lee*, 335 N.C. 244, 265, 439 S.E.2d 547, 557 (holding that defendant failed to meet his burden of showing how his absence from the conferences caused him prejudice), *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994).

In this case we note that of the ten bench conferences about which defendant complains, nine were recorded; and the transcript shows that eight of the recorded bench conferences concerned questions of law. In the remaining recorded conference, the trial court inquired of counsel how best to handle an incident where a reporter had talked to a juror. The only unrecorded conference occurred during *voir dire* of a prospective juror who was excused for cause because her views would prevent or substantially impair the performance of her duties as a juror. Defendant was present in the courtroom and was represented by counsel at each conference. Further, defendant gives no indication, and we cannot discern, how his presence would have served any useful purposes. For these reasons we hold that defendant has failed to meet his burden of showing how he was prejudiced by his absence from these conferences; therefore, this assignment of error is overruled.

By his next assignment of error, defendant contends that his right to be tried by a jury selected without regard to race was violated by the prosecutor's use of peremptory challenges. *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405 (1991).

Article I, Section 26 of the Constitution of North Carolina forbids the use of peremptory challenges for a racially discriminating purpose, *State v. Williams*, 339 N.C. 1, 15, 452 S.E.2d 245, 254 (1994), *cert. denied*, 516 U.S. 833, 133 L. Ed. 2d 61 (1995), as does the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 86, 90 L. Ed. 2d 69, 80 (1986).

In *Batson* the United States Supreme Court set out a three-pronged test to determine whether a prosecutor impermissibly excluded prospective jurors on the basis of their race. *Hernandez*, 500 U.S. at 358-59, 114 L. Ed. 2d at 405. First, a criminal defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. *Id.* at 358, 114 L. Ed. 2d at 405. Second, once the *prima facie* case has been established by the defendant, the burden shifts to the State to articulate a race-neutral explanation for striking the juror in question. *Id.* at 358-59, 114 L. Ed. 2d at 405. The explanation must be clear and reasonably specific, but " 'need not rise to the level justifying exercise of a challenge for cause.' " *State v. Porter*, 326 N.C. 489, 498, 391 S.E.2d 144, 151 (1990) (quoting *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88). Furthermore, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 114 L. Ed 2d at 406; *see also Purkett v. Elam*, 514 U.S. 765, 768-69, 131 L. Ed. 2d 834, 839-40 (1995); *State v. Barnes*, 345 N.C. at 209-10, 481 S.E.2d at 57. This Court also permits the defendant at this point to introduce evidence that the State's explanations are merely a pretext. *State v. Robinson*, 330 N.C. 1, 16, 409 S.E.2d 288, 296 (1991).

Third, the trial court must determine whether the defendant has satisfied his burden of proving purposeful discrimination. *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405. The trial court's findings as to race neutrality and purposeful discrimination depend in large measure on the trial judge's evaluation of credibility; hence, these findings should be given great deference. *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21. The trial court's determination will be upheld unless the appellate court is convinced that the trial court's decision is clearly erroneous. *State v. Kandies*, 342 N.C. 419,

434-35, 467 S.E.2d 67, 75, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 167 (1996).

In this case the prosecutor gave reasons for the excusal of each juror defendant now challenges. Therefore, "we need not address the question of whether defendant met his initial burden of showing discrimination and may proceed as if a *prima facie* case had been established." *State v. Harden,* 344 N.C. 542, 557, 476 S.E.2d 658, 665 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 483 (1997).

[8] The prosecutor used seven of his peremptory challenges to remove black venire members. Defendant contends that the reasons given by the prosecutor were a pretext and that the trial court erred in finding no purposeful discrimination for the dismissal of four black, prospective jurors—Mr. Carmon, Mr. Morning, Mr. Williams, and Ms. Ossie Brown. We disagree.

The prosecutor indicated that he excused Mr. Carmon for the reasons that Mr. Carmon was equivocal about the effect on his decision of a codefendant testifying pursuant to a plea agreement, the prosecutor was unable to make eye contact with him, and the prosecutor detected a smile or smirk when talking to him.

Regarding Mr. Morning, the prosecutor gave as reasons for his removal that Mr. Morning was equivocal about the death penalty, that he was not paying attention when the prosecutor was going through the issues related to the death penalty, that the prosecutor was not able to make eye contact with him, and that a lead investigator who would be a witness in the case had informed the prosecutor that he had questioned Mr. Morning in a felonious larceny case under investigation.

As to Mr. Williams, the prosecutor stated that his answers concerning the death penalty were equivocal, that the prosecutor had been informed by a law enforcement officer who had known Mr. Williams for a number of years that one could not depend on what he said, and that Mr. Williams had been investigated as a suspect in a larceny case several years earlier. *See State v. Glenn,* 333 N.C. 296, 303, 425 S.E.2d 688, 693 (1993) (holding that equivocation toward the death penalty is a valid basis for using a peremptory challenge).

Finally, with respect to Ms. Ossie Brown, the prosecutor indicated that from her tone of voice, facial expression, and body language, the prosecutor perceived that Ms. Brown had a belligerent

attitude or air of defiance about her which suggested to him that she would be antagonistic to the prosecution; further, in answering the questionnaire, Ms. Brown had emphasized that she had temporary custody of her grandchildren, and this fact gave the prosecutor some concern.

After carefully reviewing the transcript and applying the previously stated principles of law, we conclude that the trial court's findings that the prosecutor's exercise of peremptory strikes was not racially motivated and that the prosecutor had not engaged in purposeful discrimination are not clearly erroneous. Defendant's assignment of error is overruled.

[9] Defendant next contends that the trial court erred in denying defendant's challenge for cause of prospective juror Bullock on the basis that juror Bullock had formed an opinion and knew the victim. We disagree.

N.C.G.S. § 15A-1212 provides, in pertinent part, that a challenge for cause may be made on the ground that the juror "[h]as formed or expressed an opinion as to guilt or innocence of the defendant." N.C.G.S. § 15A-1212(6) (1997). Further, N.C.G.S. § 15A-1212(9) allows a for-cause challenge if the juror, for any other cause, is unable to render a fair and impartial verdict.

N.C.G.S. § 15A-1214(h) provides:

(h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

N.C.G.S. § 15A-1214(h) (1997).

N.C.G.S. § 15A-1214(i) provides:

(i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:

(1) Had peremptorily challenged the juror; or

(2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

N.C.G.S. § 15A-1214(i).

We agree with defendant that he has complied with the requirements of N.C.G.S. § 15A-1214 and thus has properly preserved this assignment of error for appellate review. However, the decision to deny a challenge for cause rests in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. *State v. Hartman,* 344 N.C. 445, 458, 476 S.E.2d 328, 335 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 708 (1997). In this case Bullock stated unequivocally that he could set aside his opinion and base his decision in this case on the evidence. Bullock's responses do not suggest that he would not be a fair and impartial juror or that he could not return a verdict according to N.C.G.S. § 15A-1212(6) and (9). *See State v. Perkins,* 345 N.C. at 275, 481 S.E.2d at 33 (concluding that the trial court did not err in denying the challenge for cause when prospective juror unequivocally stated he would follow the law). We hold that the trial court did not err in denying defendant's for-cause challenge.

**[10]** Defendant next argues that the trial court erred in denying his challenge for cause to alternate juror Wynn, who was related within the sixth degree to the victim in this case. *See* N.C.G.S. § 15A-1212(5). Alternate juror Wynn did not serve as one of the twelve jurors who decided defendant's case. Thus, even if the trial court's denial of defendant's challenge for cause was error, it was harmless. *State v. Carter,* 335 N.C. 422, 428, 440 S.E.2d 268, 271 (1994).

## GUILT/INNOCENCE PHASE

**[11]** Defendant contends that the trial court erred in permitting the prosecutor and State's witnesses to refer to defendant as "Homicide" during the guilt-innocence and sentencing stages of the trial. Judge William C. Griffin, Jr. signed a pretrial order which allowed "defendant's Motion in Limine to strike the alias 'Homicide' from the Court's records and to prohibit the use of said alias by Court officers and law-enforcement personnel." Defendant argues, *inter alia,* that the repeated use of the nickname "Homicide" violated the order granting his motion *in limine* and resulted in the jury's recommendation of a death sentence.

## STATE v. BONNETT

[348 N.C. 417 (1998)]

In *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995), we held that "[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." We held further that "[a] criminal defendant is required to interpose at least a general objection to the evidence at the time it is offered." *Id.* at 521, 453 S.E.2d at 846. *See also State v. Hill*, 347 N.C. 275, 293, 493 S.E.2d 264, 274 (1997) (holding that a party objecting to an order granting a motion *in limine* must attempt to introduce the evidence at the trial), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 1099 (1998).

At trial on direct examination by the prosecutor of codefendant Christopher Moore, defense counsel objected when the witness stated that defendant told him his name was "Homicide"; however, the trial court expressly found that this witness was not a court officer or law enforcement personnel and thus that his testimony did not violate the order. Subsequently, the prosecutor referred to defendant as "Homicide"; but defense counsel failed to object to this violation of the order granting the motion *in limine*.

A thorough reading of the transcript reveals that the prosecutor referred to defendant as "Homicide" three times on direct examination of codefendant Moore: once during redirect examination, once during his closing argument at the guilt-innocence phase in reference to Moore's testimony, once during direct examination of a sentencing proceeding witness for clarification, and once during his closing argument at the sentencing proceeding. Defendant did not object to the prosecutor's use of the term "Homicide."

The transcript further reveals that during cross-examination of Moore and cross-examination of two sentencing proceeding witnesses, counsel for the defense referred to defendant as "Homicide" other than to impeach the witness' testimony on this point. Additionally, when defendant took the stand during the sentencing proceeding, he himself referred to his name as "Homicide."

On this record, even assuming *arguendo* that the trial court erred in permitting the witness to refer to defendant as "Homicide," defendant cannot show prejudice in that he lost the benefit of any objection by failing to object when the prosecutor referred to defendant as "Homicide," by his counsel using the term on cross-examination, and by referring to himself as "Homicide" during the sentencing proceeding. *State v. Swift*, 290 N.C. 383, 390, 226 S.E.2d 652, 659 (1976).

Moreover, this Court has stated that "it would [not be] error to refer to defendant by the name which he was generally known. The fact that his nickname may have been demeaning does not create error per se." *Id.* This assignment of error is overruled.

**[12]** Next, defendant contends that the trial court erred in allowing codefendant Moore to testify to certain statements made by codefendants Richard and Jimmy Smith. Defendant argues that these statements constituted inadmissible hearsay. We disagree.

"Pursuant to N.C.G.S. § 8C-1, Rule 801(d)(E), a hearsay statement of a defendant's coconspirator is admissible as an exception to the hearsay rule if the statement was made during the course and in furtherance of the conspiracy." *State v. Williams*, 345 N.C. 137, 141, 478 S.E.2d 782, 784 (1996). For the statements to be admissible, there must be a showing that a conspiracy existed and that the statements were made by a party to the conspiracy, after it was formed and before it ended, and in pursuance of its objectives. *Id.* Further, the State must establish a *prima facie* case of conspiracy. *Id.* In so doing the State is afforded wide latitude, and the evidence is considered in the light most favorable to the State. *Id.* at 142, 478 S.E.2d at 784.

In this case the evidence shows that defendant and his three codefendants went to the victim's store three times to buy beer. The next time they went there, Richard Smith stayed in the car while defendant and the other two went inside, shot the victim, took his gun, and stole the money box. Then they drove to a motel, divided up the money, and attempted to take refuge in someone's house when pursued by the police. This evidence, when viewed in the light most favorable to the State, is sufficient to meet the State's burden of showing that a conspiracy existed. Further, we find that the statements of codefendant Moore in which the codefendants agreed to "hit this store," "stick together whatever happen[s]," and to "smoke the old m-----f-----," along with statements made during the robbery and murder, fall well within the hearsay exception for statements made during the course and in furtherance of a conspiracy. Thus, the trial court properly admitted these statements.

**[13]** Defendant next argues that the trial court erred by denying his request to instruct the jury on second-degree murder as a lesser-included offense of first-degree murder.

A defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support that lesser-

included offense. . . . If the State's evidence establishes each and every element of first-degree murder and there is no evidence to negate these elements, it is proper for the trial court to exclude second-degree murder from the jury's consideration.

*State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997) (citations omitted), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 150 (1998).

In this case evidence of the lesser-included offense of second-degree murder is totally lacking. Defendant argues that the evidence that he and the codefendants had been drinking, that he did not plan the murder and robbery, and that Christopher Moore did not think the Smiths would kill the victim is sufficient to support submission of second-degree murder. To satisfy his burden in establishing voluntary intoxication as a defense to negate premeditation, defendant must show that the intoxication rendered him incapable of forming the requisite specific intent. *State v. Brown*, 335 N.C. 477, 492, 439 S.E.2d 589, 598 (1994). Furthermore, Christopher Moore's belief is not pertinent to defendant's guilt or innocence. Defendant presented no evidence. The State presented evidence of each element of first-degree murder that was positive and uncontroverted; hence, the trial court did not err in declining defendant's request to submit the lesser-included offense of second-degree murder.

[14] By his next assignment of error, defendant contends that the trial court erred in its instruction on acting in concert. Specifically, defendant argues that the jury instructions regarding acting in concert permitted the jury to convict defendant of first-degree murder on the theory of premeditation and deliberation without finding that defendant had specific intent to commit the crime.

In *State v. Blankenship* this Court held that for each charge of acting in concert related to a specific intent crime, the State must prove each defendant's intent to commit the specified crime. *State v. Blankenship*, 337 N.C. 543, 558, 447 S.E.2d 727, 736 (1994). We subsequently overruled *Blankenship*, *see State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44; however, we explicitly stated that there would be no retroactive application of the overruling of *Blankenship*, *id.* at 234, 481 S.E.2d at 72. Since the crime and judgment in this case occurred subsequent to our decision in *Blankenship* and prior to our decision in *Barnes*, the rule as stated in *Blankenship* applies to defendant's case.

An examination of the instructions reveals that the trial court properly instructed the jury regarding the law of acting in concert. On

more than one occasion, the trial court emphasized to the jury that in order to find defendant guilty of premeditated and deliberate murder, the jury must find that defendant specifically intended to kill the victim. The trial court stated, "First degree . . . murder is one of those crimes requiring proof of specific intent. . . . [O]ne may not be criminally responsible as an accomplice under the theory of acting in concert for a crime which requires a specific intent, unless he himself is shown to have the requisite specific intent." This assignment of error is overruled.

**[15]** Next, defendant argues that the trial court erred in allowing the prosecutor to argue "aiding and abetting" to the jury when the trial court was not going to instruct on that theory of guilt. In *State v. Williams,* 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980), we held that "[t]he distinction between [a defendant being found guilty of] aiding and abetting and acting in concert . . . is of little significance. Both are equally guilty." Further, the record shows that the evidence overwhelmingly supported jury instructions on both "aiding and abetting" and "acting in concert"; therefore, defendant was not prejudiced by the trial court's allowing the prosecutor to so argue. We find no merit to this assignment of error.

**[16]** Defendant next contends that the trial court exacerbated the error in allowing the prosecutor to argue "aiding and abetting" and committed plain error by failing to instruct the jury on "mere presence." Defendant correctly notes that his mere presence at the scene of the crime is insufficient to support a finding that he is an aider and abettor. *See State v. Penland,* 343 N.C. 634, 650, 472 S.E.2d 734, 743 (1996), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 725 (1997). However, the evidence overwhelmingly shows that defendant was not "merely present" at the murder scene. The evidence shows that defendant agreed to the robbery and murder, and further that he supplied the murder weapon and actively participated by stealing the money box. Therefore, the trial court correctly did not instruct the jury on mere presence. Accordingly, this assignment of error is overruled.

Defendant next contends that the trial court erred in denying his motion for directed verdict at the close of the State's evidence and again at the close of all the evidence. A motion for a directed verdict should be denied if there is substantial evidence of each essential element of the crime. *State v. Rose,* 335 N.C. 301, 326, 439 S.E.2d 518, 532, *cert. denied,* 512 U.S. 1246, 129 L. Ed. 2d 883 (1994). "[T]he trial judge must consider the evidence in the light most favorable to the

State and the State is entitled to every reasonable inference to be drawn from the evidence." *Id.*

The evidence, when viewed in the light most favorable to the State, was clearly sufficient to withstand a motion for directed verdict. Without repeating all the evidence presented, the transcript shows ample evidence that defendant committed first-degree murder, under theories of both premeditation and deliberation and felony murder, and robbery with a dangerous weapon.

## SENTENCING PROCEEDING

[17] Defendant next asserts that it was error for the trial court to submit the aggravating circumstance that the murder was committed during the course of a robbery. N.C.G.S. § 15A-2000(e)(5) (1997). The jury convicted defendant of first-degree murder on the theories of premeditation and deliberation and felony murder, with robbery with a dangerous weapon serving as the underlying felony for the felony-murder conviction. Defendant argues that submission of the (e)(5) aggravating circumstance during the capital sentencing proceeding resulted in improper duplication of that circumstance.

Defendant concedes that the felony underlying a conviction for felony murder may be submitted as an aggravating circumstance under N.C.G.S. § 15A-2000(e) if the defendant is also convicted of first-degree murder on the basis of premeditation and deliberation. *State v. McNeill*, 346 N.C. 233, 241, 485 S.E.2d 284, 289 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 647 (1998). Since the jury found defendant guilty of first-degree murder under both theories, the trial court did not err in submitting the (e)(5) aggravating circumstance. This assignment of error is meritless.

[18] In his next assignment of error, defendant contends that the trial court erred in submitting the (e)(3) aggravating circumstance in that he had not been previously convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3) allows a jury to consider as an aggravating circumstance whether "defendant had been previously convicted of a felony involving the use or threat of violence to the person." Defendant argues that this aggravating circumstance cannot be introduced because his convictions for accessory after the fact do not meet the statutory requirements of the (e)(3) aggravating circumstance.

Defendant acknowledges that this Court has repeatedly held that "[t]he (e)(3) prior violent felony aggravating circumstance requires

STATE v. BONNETT

[348 N.C. 417 (1998)]

proof that the defendant was convicted of either a felony in which the use or threat of violence to the person is an element of the crime or a felony which actually involved the use or threat of violence." *State v. Flowers*, 347 N.C. at 34, 489 S.E.2d at 410. In support of the (e)(3) prior violent felony aggravating circumstance, the State offered into evidence certified copies of defendant's 1991 judgments for one count of accessory after the fact to murder and two counts of accessory after the fact to assault with a deadly weapon with intent to kill inflicting serious injury. Two witnesses testified that defendant's convictions for accessary after the fact involved defendant and others shooting guns into a nightclub in 1991; one person was murdered. This evidence supports the (e)(3) aggravating circumstance. Accordingly, the trial court did not err in submitting the (e)(3) aggravating circumstance. This assignment of error is, therefore, overruled.

**[19]** Defendant further assigns error to the trial court's submission of the (e)(4) aggravating circumstance that the murder was committed "for the purpose of avoiding or preventing a lawful arrest." N.C.G.S. § 15A-2000(e)(4). Defendant contends that this aggravating circumstance was not supported by the evidence. We disagree.

Before the trial court may instruct the jury on the (e)(4) aggravating circumstance, there must be substantial, competent evidence from which the jury can infer that at least one of defendant's purposes for the killing was the desire to avoid subsequent detection and apprehension for his crime. *State v. Wilkinson*, 344 N.C. 198, 224, 474 S.E.2d 375, 389 (1996).

In this case there is plenary evidence tending to show that defendant's motivation was based upon his desire to avoid subsequent detection and apprehension. Earlier on the day of the murder, defendant and his codefendants had each been inside the victim's store to purchase beer. After defendant and his codefendants agreed to "hit the store," they also agreed to "smoke the old m-----f-----" because, as Richard Smith said to Jimmy Smith, "you know that he know me and your face [sic]." Defendant then handed a gun to Jimmy Smith; and defendant, Jimmy Smith, and Moore went inside the store, killed the victim and robbed his store. This evidence of defendant's actions following Richard Smith's statement was substantial, competent evidence from which the jury could find that defendant participated in the killing to eliminate a potential witness against him. We find no merit to this assignment of error.

[20] Next, defendant contends that the trial court should have submitted the (f)(1) mitigating circumstance that "defendant had no significant history of prior criminal activity." N.C.G.S. § 15A-2000(f)(1). Defendant contends that his history of criminal activity is not significant and that, based on *State v. Jones*, 346 N.C. 704, 487 S.E.2d 714 (1997), he is entitled to a new sentencing hearing.

The trial court is required to submit to the jury any statutory mitigating circumstance supported by the evidence regardless of whether the defendant objects to it or requests it. *State v. Quick*, 337 N.C. 359, 361, 446 S.E.2d 535, 537 (1994). Before submitting the (f)(1) mitigating circumstance, the trial court must determine whether a rational jury could conclude that no significant history of prior criminal activity existed. *State v. Jones*, 346 N.C. at 715, 487 S.E.2d at 721. A significant history for purposes of N.C.G.S. § 15A-2000(f)(1) is one likely to influence the jury's sentence recommendation. *Id.*

The evidence of defendant's prior criminal history in the instant case includes: conviction for one count of accessary after the fact of murder; conviction for two counts of accessary after the fact of assault with a deadly weapon with intent to kill inflicting serious injury; conviction for felony possession with intent to sell and deliver cocaine, felony conspiracy to sell and deliver cocaine, and illegal usage of marijuana; conviction for drug possession and possession of drug paraphernalia in New York; and conviction of larceny of an automobile in New York. Based on this evidence, we hold that the trial court properly determined that no reasonable juror could have concluded that defendant's criminal history was insignificant.

In *Jones*, upon which defendant relies, the defendant received a new sentencing proceeding for the trial court's failure to submit the (f)(1) mitigating circumstance. *Id.* at 718, 487 S.E.2d at 723. However, we noted that "[n]o evidence presented at trial suggested that defendant had committed any violent crimes prior to the killing of the victim." *Id.* at 716, 487 S.E.2d at 722. By contrast, in this case, defendant had been convicted of violent crimes prior to the victim's murder. Accordingly, this assignment of error is overruled.

[21] In his next assignment of error, defendant contends that the trial court erred in failing to submit to the jury the statutory mitigating circumstance that defendant was under the influence of a mental or emotional disturbance at the time of the offense. N.C.G.S. § 15A-2000(f)(2).

STATE v. BONNETT

[348 N.C. 417 (1998)]

The central question presented by the (f)(2) circumstance is defendant's mental and emotional state at the time of the crime. *State v. Geddie*, 345 N.C. 73, 102, 478 S.E.2d 146, 161 (1996), *cert. denied*, — U.S. —, 139 L. Ed. 2d 43 (1997). Although one of defendant's experts testified that testing showed defendant to be disturbed psychologically and to be socially alienated with a poor self-image, insecurity, and feelings of inadequacy, neither of defendant's experts' testimony suggested any nexus between defendant's personality characteristics and the crimes he committed or any mental or emotional disturbance at the time of the killing. *See State v. Hill*, 347 N.C. at 301-02, 493 S.E.2d at 279. Accordingly, we find no merit to this assignment of error.

[22] Defendant also assigns error to the trial court's failure to submit the (f)(7) mitigator, "The age of the defendant at the time of the crime." N.C.G.S. § 15A-2000(f)(7). In support of his argument, defendant relies upon the fact that he was twenty-six years old at the time of the crime; the fact that he was abandoned at birth by his mother and grew up in a dysfunctional family; and the fact that he had an intelligence quotient of 86, a learning disability, a lack of reading skills, and a significant lack of stability and guidance.

Chronological age is not determinative of this mitigating circumstance. *State v. Daughtry*, 340 N.C. 488, 522, 459 S.E.2d 747, 765 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996). Defendant introduced no substantial evidence of his immaturity, youthfulness, or lack of emotional or intellectual development at the time of these crimes. *See State v. Bowie*, 340 N.C. 199, 203, 456 S.E.2d 771, 773 (1995). In fact, the evidence here showed that defendant has only slightly below-normal intelligence, with no major disturbance of mood or thinking. Considering this evidence, we conclude that the trial court properly declined to submit the (f)(7) circumstance. These assignments of error are overruled.

By his next assignment of error, defendant contends that the trial court erred in refusing to submit four requested nonstatutory mitigating circumstances to the jury.

In order for defendant to succeed on his claim that the trial court erred by refusing to submit particular nonstatutory mitigating circumstances, he must establish that the jury could reasonably find that the nonstatutory mitigating circumstances had mitigating value and that there was sufficient evidence of the existence of the circumstances requiring them to be submitted. *State v. Richmond*, 347

STATE v. BONNETT

[348 N.C. 417 (1998)]

N.C. 412, 438, 495 S.E.2d 677, 691 (1998). This Court has held that it is not error for the trial court to refuse to submit a nonstatutory mitigating circumstance if it is subsumed by other statutory or nonstatutory mitigating circumstances. *Id.*

Defendant requested in writing that the trial court submit sixty-eight mitigating circumstances, sixty-seven of which were nonstatutory. The judge instructed the jury on sixty-one of them, and defendant contends that the judge erred by refusing to submit the following four nonstatutory mitigating circumstances for consideration by the jury:

24. The Defendant has not been antagonistic with the therapists.

. . . .

59. The Defendant was not heavily armed.

60. The Defendant will benefit from the structured environment in prison.

61. The Defendant is an accomplice like Christopher Moore who sat in the back seat with Christopher Moore whenever they were in the car.

[23] Defendant first argues that the trial court erred in refusing to submit the mitigating circumstance that "Defendant has not been antagonistic with the therapists." The trial court submitted the mitigating circumstance that "Defendant has been cooperative with the therapists." At least one juror found this circumstance to exist and deemed it to have mitigating value. The trial court found, and we agree, that the proposed mitigating circumstance was subsumed by the mitigating circumstance that "Defendant has been cooperative with the therapists."

[24] Next, defendant argues that the trial court erred in refusing to submit the mitigating circumstance that "Defendant was not heavily armed." Assuming *arguendo* that the evidence in this case was sufficient to support the submission of this circumstance, that a reasonable juror could have found it to have mitigating value, and that the trial court thus erred by refusing to submit this nonstatutory mitigating circumstance to the jury, we conclude that the error was harmless beyond a reasonable doubt. *See State v. Green*, 336 N.C. 142, 183, 443 S.E.2d 14, 38, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

The trial court submitted the circumstance that "Defendant was not the shooter" and the circumstance that "Defendant did not encourage Little Jimmy to shoot the victim." All of the jurors rejected the circumstance that "Defendant did not encourage Little Jimmy to shoot the victim" as a circumstance in mitigation of the crime, but at least one juror found that the circumstance "Defendant was not the shooter" existed and deemed it to have mitigating value. Further, the evidence showed that defendant supplied the gun used to commit the murder. All the evidence tending to support the requested nonstatutory mitigating circumstance which was not submitted was considered by the jury under these submitted mitigating circumstances as well as under the catchall mitigating circumstance. Hence, the trial court's error, if any, in failing to submit defendant's requested nonstatutory mitigating circumstance was harmless beyond a reasonable doubt since it is clear that the jury was not prevented from considering any potential mitigating evidence.

[25] The proposed mitigating circumstance that "Defendant will benefit from the structured environment in prison" was subsumed by the submitted mitigating circumstance that "Defendant will benefit from a structured environment."

Finally, the proposed mitigating circumstance that "Defendant is an accomplice like Christopher Moore who sat in the back seat with Christopher Moore whenever they were in the car" was subsumed by the submitted statutory mitigating circumstance that "[t]his murder was actually committed by another person and the defendant was only an accomplice in the murder and his participation in the murder was relatively minor." N.C.G.S. § 15A-2000(f)(4). This circumstance, combined with the catchall mitigating circumstance, provided an adequate vehicle for the jury to consider the mitigating value of this evidence. This assignment of error is overruled.

Defendant next asserts that the trial court erred in not giving peremptory instructions on certain of the mitigating circumstances. More specifically, defendant argues that the judge agreed to give peremptory instructions on the one submitted statutory mitigating circumstance and fifty-eight of the sixty nonstatutory mitigating circumstances, but failed to do so, thus entitling him to a new sentencing hearing.

Defendant is entitled to a peremptory instruction when a mitigating circumstance is supported by uncontroverted evidence. *State v. Womble*, 343 N.C. 667, 683, 473 S.E.2d 291, 300 (1996), *cert. denied,*

—— U.S. ——, 136 L. Ed. 2d 719 (1997). "Conversely, a defendant is not entitled to a peremptory instruction when the evidence supporting a mitigating circumstance is controverted." *Id.*

**[26]** Defendant contends that the evidence concerning the (f)(4) statutory mitigating circumstance that "[t]his murder was actually committed by another person and the defendant was only an accomplice in the murder and his participation in the murder was relatively minor" was uncontroverted. N.C.G.S. § 15A-2000(f)(4). He argues that all the evidence indicates that two of his codefendants were the ringleader and triggerman. Further, he argues that the fact that the jury did not find the existence of the (f)(4) mitigating circumstance shows that the trial court committed error in failing to give the jury a peremptory instruction. We disagree.

Our review of the record shows that the evidence was not uncontroverted as to each aspect of the (f)(4) mitigating circumstance. As the prosecutor argued, defendant was not a minor participant in this crime. In fact, the evidence tends to show that defendant supplied the murder weapon and took the money box. Defendant left his house carrying the gun used to kill the victim and handed it to the triggerman just before they entered the victim's store. Although defendant testified that he did not take the money box, codefendant Moore testified that he saw defendant hand it to Jimmy Smith. Therefore, although the trial judge initially did agree to peremptorily instruct the jury on this circumstance, we conclude that given the nature of defendant's participation in the crime, the evidence regarding the (f)(4) mitigating circumstance was not uncontroverted and did not warrant a peremptory instruction. *See State v. Bond*, 345 N.C. at 39, 478 S.E.2d at 184 (holding that the trial court properly denied defendant's request for a peremptory instruction where the evidence on the (f)(4) mitigating circumstance was hotly contested).

Further, defendant asserts that the trial judge also failed to peremptorily instruct the jury on various nonstatutory mitigating circumstances. However, upon a careful reading of the transcript, we find that the trial judge did in fact give a peremptory instruction on the nonstatutory mitigating circumstances. With regard to fifty-eight of the sixty nonstatutory mitigating circumstances, the trial judge instructed the jury as follows:

[I]f one or more of you find the facts to be, as all the evidence tends to show, as to each of these mitigating circumstances[,] you would find that each circumstance exists, and further if one or

more of you deems or considers a circumstance to have mitigating value, you would so indicate by having your foreman write "Yes" in the space provided by the mitigating circumstance.

Therefore, this assignment of error is overruled.

[27] Next, defendant contends that the trial court committed reversible error by instructing the jury that it needed to be unanimous in order to answer "no" as to Issues One, Three, and Four. Defendant objected to none of these instructions at trial; our review, therefore, is limited to review for plain error. N.C. R. App. P. 10(c)(4).

During defendant's sentencing proceeding, the judge instructed the jury as follows:

On the other hand, if you unanimously find from the evidence that none of the aggravating circumstances existed, and if you have so indicated by writing "No" in the space after every one of them on that form, you would answer Issue One "No."

Defendant argues that this impermissibly shifts the burden of proof to defendant. We previously addressed this issue in *State v. McCarver*. In *McCarver* we held that "any issue which is *outcome determinative* as to the sentence a defendant in a capital trial will receive—whether death or life imprisonment—must be answered unanimously by the jury." *State v. McCarver*, 341 N.C. 364, 390, 462 S.E.2d 25, 39 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). We further stated that "the jury should answer Issues One, Three, and Four on the standard form used in capital cases either unanimously 'yes' or unanimously 'no.' " *Id.* This assignment of error is overruled.

[28] Defendant also asserts that the trial court erred in not instructing the jury that a sentence of life imprisonment means a sentence of life imprisonment without parole. Defendant concedes that the trial court initially instructed the jury that "[i]f you unanimously recommend a sentence of life imprisonment, the Court will impose a sentence of life imprisonment without parole." However, he contends that since the judge later used the term "life imprisonment" four times instead of "life imprisonment without parole," he is entitled to a new sentencing hearing. Defendant failed to object at trial; therefore, the standard of review is plain error. N.C. R. App. P. 10(c)(4).

Effective 1 October 1994, N.C.G.S. § 15A-2002 mandates that the trial court "instruct the jury, in words substantially equivalent to

those of this section, that a sentence of life imprisonment means a sentence of life without parole." The required instruction was given at the beginning of the judge's sentencing charge. Further, defendant was not prevented from informing the jury that life imprisonment means life without parole; and his counsel so informed the jury during the trial. We hold that the trial judge, having complied with the statutory mandate, did not commit error, much less plain error, by not informing the jury that a life sentence means life without parole every time he mentioned a life sentence. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises four additional issues which he concedes have been decided contrary to his position previously by this Court: (i) the trial court erred in denying defendant's motion to strike the death penalty on the ground that it is unconstitutional, (ii) the trial court erred in denying defendant's motion to require the State to reveal all evidence regarding proportionality, (iii) the trial court erred in requiring defendant's expert to prepare a written report and disclose that report to the State, and (iv) the trial court erred in allowing the State's challenges for cause of jurors opposed to the death penalty.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[29] Having found no prejudicial error in either the guilt-innocence stage or the sentencing proceeding, it is now our duty to determine (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

Defendant was found guilty of first-degree murder under theories of both premeditation and deliberation and felony murder. Following a capital sentencing proceeding, the jury found the three submitted

aggravating circumstances: (i) that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) that this murder was committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4); and (iii) that this murder was committed while the defendant was engaged in the commission of a robbery with a firearm, N.C.G.S. § 15A-2000(e)(5). Two statutory mitigating circumstances were submitted to the jury—that this murder was actually committed by another person, and defendant was only an accomplice in the murder, and his participation in the murder was relatively minor, N.C.G.S. § 15A-2000(f)(4); and the catchall, N.C.G.S. § 15A-2000(f)(9)—but neither was found. Of the sixty nonstatutory mitigating circumstances submitted, the jury found eight to exist and have mitigating value.

After careful review we conclude that the record fully supports the jury's finding of the aggravating circumstances submitted. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now determine whether the sentence of death in this case is excessive or disproportionate.

We begin our proportionality review by comparing this case to those cases in which this Court has determined that the death penalty was disproportionate. This Court has concluded that the death sentence was disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). However, we find that the instant case is distinguishable from each of these seven cases.

First, we note that in none of the cases were three aggravating circumstances found. Moreover, in none of the seven cases in which the sentence was found to be disproportionate was the (e)(3) aggravating circumstance included. *State v. Lyons*, 343 N.C. 1, 27-28, 468 S.E.2d 204, 217, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). "The jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence propor-

tionate." *Id.* at 27, 468 S.E.2d at 217. Further, we reiterate the fact that the jury found defendant guilty of first-degree murder under theories of both premeditation and deliberation and felony murder.

However, defendant argues that his case is as compelling, if not more, than the defendant's case in *Stokes* in which this Court reversed a sentence of death. We disagree. In *Stokes* this Court held that defendant Stokes did not appear more deserving of death than his codefendant Murray, who received a life sentence. *State v. Stokes*, 319 N.C. at 21, 352 S.E.2d at 664. In support of this conclusion, we noted that Stokes was only seventeen years old, and Murray was considerably older; Stokes suffered from impaired capacity to appreciate the criminality of his conduct; and at the time of the murder, Stokes was under the influence of a mental or emotional disturbance. *Id.*

In the case *sub judice*, two codefendants (Richard Smith and Jimmy Smith) were convicted of first-degree murder and each received a sentence of life imprisonment, the other codefendant (Christopher Moore) pleaded guilty to second-degree murder pursuant to a plea agreement. Here, defendant was twenty-six years old at the time of the murder and was the same age as Jimmy Smith and was only six years younger than Richard Smith. Defendant was convicted of first-degree murder on the theories of premeditation and deliberation and felony murder; but Stokes was convicted solely on a felony-murder theory, and there was little evidence of premeditation, *id.* at 24, 352 S.E.2d at 666. Further, the evidence tended to show that defendant here supplied the murder weapon and actually took the money box from the victim's store. The jury in defendant's trial found three aggravating circumstances to exist; whereas, in the Smiths' trial the jury found only one aggravating circumstance to exist. Unlike Richard and Jimmy Smith, defendant had previously been convicted of violent felonies. On these facts we cannot say as a matter of law that the sentence of death is disproportionate when compared with other cases roughly similar with respect to the crime and the defendant.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error and that the sentence of death imposed by the trial court is not excessive or disproportionate.

NO ERROR.

Justice ORR did not participate in the consideration or decision of this case.